WALTER L. HUNT, Appellant, v. CITY OF ST. LOUIS, AQUA CONTRACTING COMPANY and G. A. HEMAN, Appellant.

Division Two, May 19, 1919.

1. **NOTICE OF SUIT:** Filing of Petition and Service of Summons. The filing of a petition for damages against the city and the service of summons upon the mayor within ninety days after plaintiff's injury, due to an obstruction in a public street, is a compliance with the statute which requires that notice in writing of the time, place, circumstance and character of the injury be given the mayor within ninety days after the injury—especially where the contents of the petition are such as to comply substantially with the notice required by the statute.

2. **EVIDENCE:** Photographs. Photographs, taken at night after the casualty, which happened at night, by the identical street lamps

which lighted the situation when plaintiff was hurt, are admissible evidence to show the lights and shadows and the general appearance of the place at night, although they do not show the whole situation as it existed at the time of the injury. [Distinguishing Riggs v. Railroad, 216 Mo. l. c. 335.]

3. **NEGLIGENCE: Street: Reasonably Safe Condition: Ordinary Mode of Travel.** It is the duty of a city to keep its streets in a reasonably safe condition for travelers passing over them in any and all modes, provided only (1) such modes are lawful and (2) do not of themselves constitute contributory negligence in the traveler to a degree forbidding his recovery for injuries received.

4. ———: ———: ———: ———: **Runaway Horse: Instruction.** Where the street was obstructed by long piles of rock and sand, which narrowed the passageway to from five to eight feet, and the horse which plaintiff was driving at night ran his delivery wagon against the obstruction, turned the wagon over, threw plaintiff out and, becoming frightened, dragged him some distance, badly injuring him, the true test of the city's duty to keep its streets in a reasonably safe condition for public travel is not whether the horse was running away, but whether, if he was running away, that fact (which might itself constitute a phase of contributory negligence) or the fact of the city's negligence was the proximate cause of plaintiff's injury. In such circumstances the well known doctrine of concurrent negligence applies. Consequently an instruction which states the duty of the city to be complete if it maintains its streets "in a reasonably safe condition for travelers passing in the ordinary mode" and relieves it of damages for the injury if it so maintained them, is too narrow.

5. ———: ———: **Obstruction: Red Lights: Ordinance.** Where the ordinance required the placing of two red lights on a pile of building material fifty feet long, one at each end, and an additional light for every additional fifty feet in length, or part therof, and the pile was seventy-five feet long, reached in width almost half way across the street and was three or four feet high, an instruction telling the jury that even if no warning lights were placed yet if the pile of macadam was so well lighted that it could easily have been seen by one exercising ordinary care while such distance away as to enable him easily to avoid it, was not error.

6. ———: **Repairing Street: Duty of City.** If the contractor, engaged in repairing a public street, does things that render the street or adjacent streets dangerous or hazardous to public travelers, it becomes the duty of the city, upon notice of the condition, to either remedy it, or to place barriers upon the street taking it out of public use, or to give notice of its dangerous condition.

Hunt v. St. Louis.

7.  ————: **Inevitable Accident: Runaway Horse.** If the horse to the
delivery wagon driven by plaintiff got beyond his control, due
to no contributory negligence on plaintiff's part and to no neg-
ligence on defendant's part, ran away and injured him, his in-
jury was caused by inevitable accident; and where there is
evidence that plaintiff's injury was due alone to the horse running
away, an instruction on the subject of inevitable accident should
be given.

8.  ————: **Repair of Street: Reasonable Obstruction.** Contractors
engaged in repairing public streets have a right to temporarily
obstruct them and adjoining streets by piling macadam and other
material in so much of them as is reasonably necessary for
carrying forward the repair work.

9.  **INSTRUCTION: Refusal: Covered by Others.** It is not neces-
sary to decide whether an instruction asked and refused was a
correct statement of the law or called for by the facts, if the identi-
cal propositions stated in it were embraced in other instructions
given.

10. ————: ————: **Red Light on Obstruction: Removal.** If a red
light was placed on the street obstruction against which plaintiff
drove a delivery wagon, it is not error to refuse to instruct
that if the light was removed by some unauthorized person the
city or contractor would not be liable for any injury due to its
absence, for such instruction leaves out of consideration their
duty to replace a' warning light after a reasonable opportunity to
discover its absence.

11. ————:. ————: ————: ————: **No Evidence.** If there was no
evidence that a red light placed upon the street obstruction had
been removed by some unauthorized person, no instruction re-
lieving the city or contractor from liability for an injury to a
traveler who drove his wagon against the obstruction, because
of such removal, should be given. If the light had been placed
and was not present when the accident occurred, the jury can
draw the inference that it had been removed, but this was not a
matter demanding an instruction. Besides, any instruction on
the point would be an unwarranted comment on the evidence.

12. **NEGLIGENCE: Sub-Contractor's Tort: Liability of Contractor.** If
at most a company was the agent of the man who actually did the
work of repairing the street in obtaining in its own name an
unassignable and unassigned contract, and neither shared nor was
expected to share in' the profits or losses, and said company is
not sued as agent and the pleadings do not reveal upon what
legal basis its liability is founded, it is not error to refuse to
hold it liable for the torts of the city or of the man who did the
work.

Appeal from St. Louis City Circuit Court.—*Hon. William L. Kinsey*, Judge.

AFFIRMED in part; REVERSED AND, REMANDED in part.

*S. C. Rogers* for appellant Walter L. Hunt.

(1) The court erred in admitting in evidence over the objection of this appellant the photographs of the locality in question taken a year after the accident. Riggs v. Railroad, 216 Mo. 326. (2) The court erred in giving instructions numbered five, six, seven, eight, nine, ten and twelve, and each of them, at the request of the respondent city over the objection of appellant. (a) Instruction five attempts to state an abstract proposition of law as to the duty of the city in keeping its streets reasonably. safe. for travel in the ordinary mode and instructs the jury to find for the city if an ordinary prudent man would have anticipated danger therefrom, omitting the fact Hunt did not see it, or know it was dangerous. It is an incorrect statement of the law and should not have been given. Mehan v. City of St. Louis, 217 Mo. 35; Welsh v. City of St. Louis, 73 Mo. 74; Schlinski v. St. Joseph, 170 Mo. App. 387; Burton v. Kansas City, 181 Mo. App. 427; Vance v. Kansas City, 123 Mo. App. 644. (b) Instruction number six assumes that the horse was running away, which was a controverted fact, and should not have been given. Quinn v. Van Raalte, 205 S. W. 68; McNiell v. City of Cape Girardeau, 190 S. W. 327; Clark v. St. Joseph Railroad Co., 242 Mo. 570; Moon v. Transit Co., 247 Mo. 227; Townsend v. City of Joplin, 139 Mo. App. 399; Harrison v. Kansas City Electric Light Co., 195 Mo. 623; Brennan v. City of St. Louis, 92 Mo. 486; Knights v. Kansas City, 138 Mo. App. 153. (c) Instruction number seven, to the effect the city was not liable for failure to enforce its ordinances, should not have been given. Robison v. Kansas City, 181 S. W. 1004. (d) The court erred in giving instruction number eight. It told the

jury one should not run into dangerous obstructions readily visible which ought to be seen; that one did not have to have actual knowledge, as it could be imputed to him; and that even if Hunt did not see the macadam, yet if he should have seen and should have avoided it, they must find for the city, omitting the knowledge that it was dangerous amongst its many other patent errors. Coffey v. City of Carthage, 186 Mo. 573; Heberling v. Warrensburg, 204 Mo. 604. (e) The court erred in giving instruction number nine. It told the jury that if the light, where the macadam was placed, was such that the macadam could easily be seen so it could easily be avoided and that ordinary prudence did not require a light, they should find for both defendants. Burton v. Kansas City, 181 Mo. App. 427. (f) The court erred in giving instruction number ten. This is the old and often condemned mishap or mischance accident instruction. Beauvais v. St. Louis, 169 Mo. 506. (g) The court erred in giving instruction number twelve. This instruction told the jury the contractors could obstruct the streets as may be reasonably necessary, and if they so piled material on Twenty-Second Street, leaving a clear space for passage of vehicles, which was not permitted to remain longer than necessary, then it was not a wrongful nor unlawful obstruction. Amongst other vices, it omitted the question of dangerous piling. The question of wrongful or unlawful piling was not at issue; the question was of dangerous piling and efforts to protect and render less dangerous.

*Charles H. Daues* and *Everett Paul Griffin* for respondent City of St. Louis.

(1) It is proper, and usually very desirable for the information and instruction of the court and jury, to introduce in evidence photographs, even though taken a considerable time after the accident, showing the general appearance of the scene where the accident happened, and even though the conditions existing may be a little different from the conditions which existed

at the very time of the accident.  Davidson v. Frisco Railroad, 164 Mo. App. 701;  Lauff v. Kennard & Sons Carpet Co., 186 Mo. App. 123.  (2) Instruction five correctly states the law with regard to the duty of the city in the care of its streets.  4 Dillon on Municipal Corporations (5 Ed.), sec. 1711; 6 McQuillin on Municipal Corporations, sec. 2726;  Ryan v. Kansas City, 232 Mo. 471;  Wheat v. St. Louis, 179 Mo. 572;  Woodson v. Metropolitan Street Ry. Co., 224 Mo. 685.  (3) Instruction six does not assume that the horse was running away.  (4) Instruction seven is a correct statement of the law, as the city is not liable for the violation of its ordinances nor for failure to enforce said ordinances.  Salmon v. Kansas City, 24 Mo. 14;  Ryan v. Kansas City, 232 Mo. 483;  Mehan v. St. Louis, 217 Mo. 35;  Loth v. Columbia Theatre Co., 197 Mo. 358; Sallee v. St. Louis, 152 Mo. 621;  Harmon v. St. Louis, 137 Mo. 499;  Butz v. Kavanaugh, 137 Mo. 510.  (5) Instruction nine was a correct statement of the law in this case, as it submitted to the jury as a question of fact whether there was sufficient light for the pile of macadam to be seen without the additional use of a red light.  This was a question for the jury and properly submitted to the jury, because it there was sufficient light for the plaintiff to have easily seen the pile of macadam so as to have easily avoided the same had he used ordinary care, then the city and the other defendants were not liable.  (6) This was a proper case for giving the instruction to the effect that if the accident occurred through mischance or accident, there could be no liability against the city.  (7) Instruction twelve correctly stated the law, for if the city and its contractors were not permitted to pile material on the street for the purpose of reconstructing the same, then it would be practically impossible to reconstruct any streets.  (8) The court should have sustained the instruction in the nature of a demurrer to plaintiff's evidence offered at the close of plaintiff's case, for the reason that the evidence in the case shows that plain-

tiff failed to comply with Laws 1913, p. 545, requiring that in personal injury suits against the city for injuries occurring on the streets and highways a notice in writing shall be served upon the mayor within ninety days after the accident, stating the time, place and circumstances of the injury. This the plaintiff failed to do. The statute in this regard is peremptory. Hackenyos v. St. Louis, 203 S. W. 986; Touhey v Decatur, 175 Ind. 98.

*J. P. McCammon* for respondent-appellant G. A. Heman.

(1) Instruction 1a asked by this appellant should have been given. McPheeters v. City, 92 N. Y. Supp. 79; Jackson v. Kansas City, 106 Mo. App. 52; Parker v. Cohoes, 10 Hun, 531; Doherty v. Waltham, 4 Gray, 596; Walsh v. Lansing, 70 N. W. 129. Certainly, having placed lights where defendant was piling macadam on the street, he could not presume there was danger of their removal or extinguishment, nor could he be held for the wrongs of others in removing or extinguishing them, and in view of the positive and uncontradicted evidence of their being in place before plaintiff's injury, the question was one to be submitted to the jury. Since this was the only instruction referring to this phase of the case, its refusal was plainly error. (2) Defendant. Heman pleaded contributory negligence of plaintiff in driving his horse at a dangerous rate of speed, and in failing to check or control his horse, and stop his horse when the arc light showed that part of the street where he drove his horse was occupied by the material which overturned his wagon. There was direct, positive evidence of contributory negligence, proper and material under the issues.

FARIS, J.—This is an action brought by plaintiff against defendants for personal injuries accruing to him, as he avers, from the negligence of defendants.

Upon the trial below, defendant Aqua Contracting Company was held not liable upon a directed verdict, and the City of St. Louis, pursuant to the jury's verdict; while the verdict and judgment went against defendant Heman for the sum of $7500. From the above verdicts and the judgments rendered thereon, the plaintiff appeals as against defendants City of St. Louis and Aqua Contracting Company, while defendant Heman appeals from the judgment rendered against him and in favor of plaintiff. Pursuant to stipulation an order was made by us consolidating these cross appeals, and the case is before us for decision upon all three of the questions presented.

The facts of the casualty for which plaintiff sues are fairly simple, and so many of these facts as are necessary to an understanding of the questions presented upon the appeals run substantially thus: On a day prior to the 3rd day of January, 1914, defendant City of St. Louis had entered into a written contract with defendant Aqua Contracting Company for the repair of that portion of Biddle Street extending from Fourteenth Street to Jefferson Avenue, by taking up and removing the old pavement and curbing thereon and putting in place and completing a new pavement and curbing. After executing this contract with the City of St. Louis, defendant Aqua Contracting Company duly executed a bond to the City of St. Louis, conditioned upon the faithful and proper performance thereof. Thereafter, the Aqua Contracting Company (hereinafter for brevity called simply the Company) had nothing farther to do with the performance of the contract, or the making of the repairs upon this street, but permitted defendant Heman to do this work in his own way and for his own profit. When the tax bills were made out to the Company the latter delivered them to defendant Heman, who in turn assigned them to one Ruckert, who furnished Heman with money with which to finance and carry out this contract.

On the evening of January 3, 1914, about seven or eight o'clock, plaintiff, driving a single horse hitched to a delivery wagon of the Famous-Barr Company, for which he was a driver, was coming south along Twenty-Second Street, approaching Biddle Street at the point where defendant Heman was then engaged in rebuilding the street. On Twenty-Second Street at a point near to or adjoining Biddle Street, defendant Heman had deposited for his convenience in the repair work a large quantity of rock for the making of macadam. This rock was so piled and of such dimensions that it extended from a point quite near the north side of Biddle Street to a point near the alley north of Biddle Street, a distance of some seventy-five feet or more. Eastwardly, this pile of material extended from the west curbing of Twenty-Second Street to a point at or near the center thereof. On the east side of Twenty-Second Street a large pile of sand had been deposited. The effect of the piling, upon this street, at the point stated, of the sand and the rock, was to obstruct and narrow the passageway on the street; so that at the time plaintiff came south on this street the passageway for vehicles between the sand and the rock was only from five to eight feet wide. Moreover, at the same time a brewer's wagon, drawn by a team of two mules, was coming north in this narrowed and constricted passageway.

Plaintiff was driving in a fast trot, according to his own testimony and that adduced in his behalf. While so using this street and as he approached Biddle Street from the north, the horse which he was driving ran the delivery wagon against the pile of rock, turned the wagon over, threw plaintiff out on the ground and, becoming frightened, dragged plaintiff a distance of some seventy-five feet. The result was that the bones in plaintiff's left foot and ankle were seriously crushed and broken, and he was otherwise hurt and bruised. His injuries were serious, and as a result thereof he was for a long time unable to walk, was put to much

expense for medical service, and is without question lamed and permanently hurt. No question is made as to the extent of his injuries, however, nor is the amount of the verdict objected to on account of its alleged excessiveness.

Plaintiff's cause of action is, as to the City of St. Louis, bottomed upon the alleged negligence of the latter in failing to keep and maintain its public streets and highways free from nuisances and dangerous obstructions and in a reasonably safe condition for persons and vehicles traveling thereon lawfully. The cause of action against defendant Heman and defendant Company is bottomed upon the fact that they were, as plaintiff avers in his petition, together engaged in doing the work of repair on Biddle Street, and were negligent in piling in Twenty-Second Street large quantities of macadam, sand and other material used in and necessary to be used in the reconstruction of Biddle Street, and having so obstructed the street they failed and neglected to observe a certain ordinance of the City of St. Louis which requires the placing of warning red lights on building material when the latter is so placed as to constitute an obstruction in the public streets. The above ordinance, so relied on by plaintiff, requires that if the obstruction on which a red light is required to be placed is not more than ten feet in length, then a single light is sufficient, but if the same is over ten feet and less than fifty feet long, two red lights are required, one at each end, and an additional red light is required for every additional fifty feet, or part thereof, in length of the obstruction.

On the part of plaintiff the evidence tended to show that there were, at the time of the happening to him of the casualty complained of, no red light, or lights whatever, on either the macadam or on the sand. The evidence on the part of defendant tended to show that one red light had been placed by the watchman of defendant Heman on the north end of the pile of macadam, and that this red light (as a number of

witnesses testified) was on this macadam at the instant plaintiff was hurt. It was contended furthermore by defendants that there was no necessity for a red light on the south end of the pile of macadam, or upon any other part thereof, since certain street lights on Biddle Street so lighted up this building material as to make it easily and readily visible.

The testimony on the part of defendants further tended to show that the horse which plaintiff was driving was, at and just prior to the instant of the casualty, beyond control and running away. This fact was denied by plaintiff, as well as by certain witnesses whom he offered. There was evidence *pro* and *con*, and the matter therefore became a question for the jury.

It is contended by plaintiff on his appeal (a) that the court erred in directing a verdict in favor of the Aqua Contracting Company, and (b) in admitting certain evidence, and in giving certain instructions which resulted in the verdict in favor of defendant City of St. Louis. It is contended by defendant Heman that the court erred in refusing to give certain instructions which were offered by him, and that the verdict against him was induced by these errors. As stated, two appeals were originally taken in this case and were consolidated upon our order, pursuant to stipulation, and the whole case, with all the points above involved, is now before us for determination in a single opinion. Such other facts as may be necessary to make clear the many points which the nature of the case requires to be discussed will be set forth in that discussion.

I. On the threshold we are met by the contention of defendant City of St. Louis that, regardless of any errors, if such there be, the verdict of the jury as to it should be upheld, since as to it the court

Notice of Suit.    erred in refusing to sustain the demurrer to the evidence offered at the close of the case.

This contention is bottomed upon the alleged fact that no notice in writing was given by plaintiff to the mayor of defendant city within ninety days after his injury, of the time, place, circumstances and character of such injury to plaintiff, and of the fact that plaintiff would claim damages therefor, as the statute requires. [Laws 1913, p. 545.]

While no notice, as such, was given to the mayor, the original petition in this case was filed and summons therein, with a true copy of the petition attached, actually served on the mayor of defendant city in less than ninety days after the injury occurred. The allegations of the petition so filed and served upon the mayor were such as to comply substantially with the requirements of the statute invoked and above cited. The Kansas City Court of Appeals in a well-considered opinion held that where an action is commenced and summons, accompanied by a copy of the petition, is served on the mayor within ninety days after the injury complained of is received, no other or further notice is required. [Morrill v. Kansas City, 179 S. W. 759.] The correctness of this ruling impresses us; especially where, as here, the contents of the petition are such as to comply substantially with the written notice which the statute requires to be given. [Cf. Jacobs v. St. Joseph, 127 Mo. App. 669.] On the authority of the above case, which seems to us to be consonant with the reason of the thing, and to approve a method of notice in substantial compliance with the statute, we are of the opinion that this contention of defendant city is untenable.

II.  Coming to the merits of plaintiff's appeal so far as the latter affects the judgment against defendant city, we find numerous alleged errors urged. Upon the trial certain photographs, which were taken subsequent to the happening of the casualty, were offered

**Photographs.** by defendants and admitted in evidence by the court. To these photographs plain-

tiff objected and excepted, and now complains that
they were inadmissible for that they did not precisely
represent the situation existing at the time plaintiff
was hurt. The purpose for which these photographs
was offered, as stated by counsel when he offered them,
was to show the lights and shadows and the general
appearance of the *locus in quo* at night. Plaintiff was
hurt at night, and the photographs in question were
taken at night by the light of the identical street
lamps which lighted the situation when plaintiff re-
ceived the hurt in controversy. After the casualty to
plaintiff and before the photographs were taken one
building had been torn down. This building in no wise
affected the situation as to lights and shadows. Like-
wise, the piles of macadam and sand had been re-
moved by building them into Biddle Street; otherwise
the situation was precisely as it was on the date of
plaintiff's injury. We are of opinion that plaintiff's
contention touching the inadmissibility of these photo-
graphs is untenable. He relies upon the case of Riggs
v. Railroad, 216 Mo. l. c. 335, which case, he contends,
sustains the view that the photographs were inadmis-
sible. We do not think the Riggs case sustains this con-
tention. In the Riggs case the photographs, which were
offered to show the position of plaintiff therein when
he was struck by a car and injured, represented his
position by dummy figures. These figures, as the
photographs which were offered showed them, were in
positions wholly different from the positions shown
by the other evidence in the case. Very naturally it
was held by this court that the photographs offered
did not truly represent the situation existing, but that
they were misleading and therefore inadmissible.

The mere fact that a photograph does not show
all of the persons and objects which were present
when a fact in issue transpired does not of itself ren-
der the photograph inadmissible. [Lauff v. Carpet
Co., 186 Mo. App. 123; Davidson v. Railroad, 164

Mo. App. 701.] If the photograph tells the truth
about the situation and surroundings so far as it pur-
ports to show these things, ought it to be excluded
simply because it does not show some of the surround-
ings, the showing of which has by the time the photo-
graph is taken become impossible? We do not think so,
any more than that a witness ought to be excluded
because he is unable to tell all of the facts in the
case, but only a part of them. [1 Wigmore on Ev.
par. 792.]

III. On the part of the city, and at the latter's
request, the court *nisi* gave the following instruction,
to-wit:

"The court instructs the jury that the liability of
the city goes no further than to require it to use or-
dinary care to keep its streets in reasonably
safe condition for travelers passing over
them in the ordinary mode; that the city is
not required to keep its streets in such a safe condition
that persons in vehicles conveyed by runaway horses
will not meet with injury. If, therefore, you find and
believe from the evidence that Twenty-Second Street
at the point referred to in the evidence was at the time
when plaintiff was injured in a reasonably safe con-
dition for ordinary travel, and that the injury was
occasioned by plaintiff's horse getting from under his
control and running away, and would not have occurred
had the horse not been running away, then your ver-
dict should be in favor of defendant, the City of St.
Louis. And in this connection the court further in-
structs the jury that the law is as stated to you in
this instruction, regardless of whether the runaway was
caused by the negligence of plaintiff or by some ac-
cidental circumstances for which he is not responsible."

Plaintiff contends that the giving of this instruc-
tion is error, for that it assumes as true a sharply
contested issue of fact; that is, it assumes that the
horse driven by plaintiff was, when the latter was in-

jured, beyond his control and running away. It is almost elementary that if the instruction does assume as true the fact that the horse was running away, touching which fact there was among the proof offered evidence *pro* and *con,* the giving of it was error. [Crow v. Railroad, 212 Mo. 589; Wilkerson v. Eilers, 114 Mo. 245.] We do not think the latter part of this instruction assumes as true the fact that the horse was running away, but that it may fairly be construed as leaving the determination of this disputed issue to the triers of fact. But plaintiff further urges that the limiting by this instruction of the duty of the city to so maintain its streets as that they shall be "in reasonably safe condition for travelers passing over them in the ordinary mode" is an assumption that the horse was running away, and that its further effect is to narrow and restrict the duty of the city touching the maintenance of its streets in a way and to an extent which the law does not warrant. Relegating the determination of the first part of this criticism to the plain and well-settled rule announced in Crow v. Railway, supra, we are nevertheless of the opinion that the duty of the city, as this duty is defined by this instruction, is too narrow and restricted.

It is the duty of the city to keep its streets in reasonably safe condition for travelers passing over them in any and all modes: *provided only,* (1) such modes are lawful, and (2) do not of themselves constitute contributory negligence in the traveler to a degree forbidding his recovery. The true test, therefore, is not whether the horse was running away, but whether, if he was running away, that . fact (which might itself constitute a phase of contributory negligence) or of the fact of the city's negligence was the proximate cause of plaintiff's injury. This is the well known doctrine of concurrent negligence, which doctrine is the settled law of this State. [Graefe v. Transit Co., 224 Mo. 232; Buckner v. Horse & Mule Co., 221 Mo. l. c. 710; Scheurer v. Rubber Co., 227 homely baby-carriage. One may not use a street un-

Mo. 347; Krehmeyer v. Transit Co., 220 Mo. l. c. 655; Harrison v. Kansas City Elec. Co., 195 Mo. l. c. 623; Straub v. St. Louis, 175 Mo. 413; Brash v. St. Louis, 161 Mo. 433; Lore v. Mfg. Co., 160 Mo. 618; Vogelsang v. St. Louis, 139 Mo. 127; Bassett v. St. Joseph, 53 Mo. 290.]

It is a fact known to all men that many horses shy and become frightened and sometimes run away. The fact that plaintiff may have been driving a horse which became frightened and ran away cannot upon the facts in this case be said to constitute contributory negligence as a matter of law. Such running away of the horse might, of course, constitute contributory negligence if the facts in evidence *aliunde* showed such negligence, but standing alone as the fact does here the question was one for the jury; especially is this true when the question whether or not the horse was running away is a sharply contested one. If the horse was running away, and this fact was the proximate cause of the hurt to plaintiff, the latter cannot recover. If, however, the hurt to plaintiff would not have happened but for the concurring negligence of the city, and if the running of the horse was not due to plaintiff's negligence, that is, if the plaintiff was not negligent in driving a horse which was known by plaintiff to be addicted to running away, then the fact that the horse ran away and plaintiff was hurt would not inevitably excuse the negligence of the city.

If the test of the use of the streets and sidewalks of cities by pedestrians and persons riding thereon is to be that of the use thereof in the "ordinary mode," serious questions would inevitably arise as to what constitutes *the ordinary mode.* This question will comprehend the rate of travel as well as the means thereof, and such a rule might well put beyond the pale of protection the lowly banana peddler, who perforce his business must roll a handbarrow, and the man of family who, as a means of domestic peace, trundles the

lawfully, that is, break, while using it, either the or-
dinance or the law, nor may he, being himself guilty
of contributory negligence in the use thereof, recover
for the city's negligence. Beyond this general rule it
seems unsafe to go in restricting the use of a public
highway in a city or town. Hence it follows that In-
struction 6 was bad. Since Instruction 5, of which
plaintiff likewise complains, is subject to the identical
vices above discussed, it is in our opinion likewise bad.

IV. Plaintiff complains of instruction nine, given
on the part of defendants. This instruction reads
thus:

"The court instructs the jury that even if you find
and believe from the evidence that no warning lights
**Red Lights.** had been placed upon the pile of macadams
in the street, nevertheless, if you further
find and believe from the evidence that the place at
which the macadam was placed was so well lighted that
the pile of macadam could have been easily seen by one
exercising ordinary care while such distance away as
to enable him easily to avoid it, and that ordinary
prudence did not require a warning light to be placed
thereon, then your verdict shall be in favor of both
defendants."

Under the facts of this case we do not think the
giving of the instruction last above was error. The
pile of macadam was some 75 feet long, reached in
width almost half way across the street, and was some
three or four feet high. If the jury had found, as this
instruction left to them to find, this this huge obstruc-
tion was readily visible or could have been easily seen
by plaintiff by the light afforded from the street lamp,
obviously it followed that he should have avoided strik-
ing it, and obviously in that event, his hurt could not
have been due to the failure of defendants to place
the warning red lights as the ordinance requires. And
in such event his hurt was due to his failure to avoid
an obstruction plainly visible and which he saw or

ought to have seen. We think this contention of plaintiff is not well taken.

V. Objections are also urged against instruction eight, which was given for the defendants. Without burdening these views with a discussion of this contention, it is enough to say—since this case must for other errors be reversed and remanded as to the defendant city—that upon a re-trial instruction eight can be re-written so as to conform to the proper standard.

VI. Instruction seven is in our opinion likewise bad. It is not a question of the defendant city's liability for its failure to enforce its own ordinances. There is no doubt that no such liability exists, but here the duty violated by the city was that which Duty of required it to keep and maintain its streets in City. a reasonably safe condition for the use of persons exercising ordinary care for their own safety. The city had let a contract for the doing of this repair work upon one of its streets. If its contractor, or any sub-contractor, did things to this street or to adjacent streets which rendered travel thereon dangerous or hazardous, it became the duty of the city, upon notice of such condition, perforce the rule above mentioned, to either remedy this condition, or to put barriers on this street taking it out of public use, or to give notice to all and sundry of its dangerous condition.

VII. Complaint is likewise made that instructions ten and twelve are bad. Instruction ten is the ordinary inevitable accident instruction. We think it was warranted here upon the defendants' theory Inevitable that the horse was running away, and that Accident. this fact alone and not any negligence of the defendants caused plaintiff's injury. If the horse was in fact beyond control and this condition was not due to plaintiff's contributory negligence, but nevertheless such condition and not defendants' negligence caused

plaintiff's hurt, then that hurt was caused by inevitable accident, namely, the running away of the horse, for whose act nobody and nothing but the horse was at fault,—and the horse is not a party to this action.

VIII.   Instruction twelve reads thus:

"The court instructs the jury that contractors engaged in the construction and repair of public highways have the right. temporarily to obstruct and use such part of such highways for the storage

Reasonable Obstruction.

of material to be used in such work of construction or repair, as may be reasonably necessary under all the circumstances.

"You are further instructed that if you find and believe from the evidence that the defendant G. A. Heman was engaged in the reconstruction of Biddle Street and that in connection with such work he piled macadam upon Twenty-Second Street and immediately adjoining Biddle Street, but that in so doing he used only such part of said street as was reasonably necessary for that purpose, leaving a clear space for passage of vehicles, and that said macadam was not permitted to remain there for a longer period than was under all the facts and circumstances reasonably necessary, then said pile of macadam was in itself neither wrongful nor an unlawful obstruction of said Twenty-Second Street."

If this instruction does not state the law, then there must be an end to street improvement, as well as to the construction of houses and structures of whatever sort in the large cities. No such work of construction could be carried on practicably and feasibly unless some obstruction of a street is to be permitted. If such obstruction by necessary building material be no more than is reasonably necessary in the doing of the work in hand, no actionable negligence can be bottomed upon the bare fact of obstruction.   This contention is therefore, in our view, untenable; but for the divers errors in other instructions given ·on

behalf of defendant city the case must be, as to the city, reversed and remanded for a new trial.

IX.   Coming now to the appeal of defendant Heman, our attention is directed to alleged error in refusing three instructions which Heman offered upon the trial.   Instruction 1a, the refusal of which is urged as error, in substance told the jury that even though they should find that there were no warning red lights on the street material, and that the latter was so placed and piled as to be unsafe and dangerous, yet if the jury should further find that plaintiff had lost control of his horse and had thereby become unable to direct the course of the latter, and that this fact and not defendant's negligence in the behalves mentioned, caused plaintiff's injury, then the finding of the jury should be for defendants. Whether this instruction was proper or called for by the facts, we need not take up space to say, for the court gave for both defendants instruction thirteen, which covered the identical propositions of law embraced in the refused instruction.   This was all that was necessary, especially in a case wherein thirty-three instructions in all were offered, and twenty actually given to the jury.

**Refused Instruction.**

X.   Instruction 2a, which was offered by defendant Heman and refused by the court, submitted to the jury the issue whether the red light which the watchman of defendant Heman swore he put on the pile of macadam and which some of the witnesses in the case swore was thereon when plaintiff was hurt, had not been removed by some predatory or other unauthorized person.   If, continued this proffered instruction, such light was removed or extinguished by some person other than the servant of Heman, the latter would not be liable for any negligence flowing from the absence of this red light.   Obviously this instruction is bad, because it

**Removal of Light.**

leaves out of consideration the duty of defendants to replace the warning light after a reasonable opportunity, under the circumstances existing, to discover its absence, even though such light had been removed by some unauthorized person. [Doherty v. Waltham, 4 Gray, 596.] But granting, for the sake of argument, the correctness in the abstract of defendants contention, the concrete difficulty presented and which confronts us lies in the fact that there is not a scintilla of evidence on which to base this instruction. There is testimony from the watchman that he put one red light on the north end of the pile of macadam about an hour before the casualty occurred. There is also much testimony that there was a red light on this pile of rock at this point at the very instant of time that the injury happened, and on the other hand there is much testimony on plaintiff's side contradicting the presence of any light at all at this time; but there is neither affirmative hint nor testimony in the record that any unauthorized or predatory person removed the red light in the interval between the alleged placing of the light upon the rock and the happening of the casualty. Clearly, somebody was in error on the point whether a red light was on this pile of material or not. This contradiction was for the jury. An inference would naturally arise that the light had been removed, if the jury had found from the evidence that this light had been placed on the macadam, and if it had further found that the same was not there when the casualty occurred, but this was not a matter demanding an instruction. In fact, an instruction upon the point would have been in the last analysis a most subtle and vicious comment upon the evidence of defendant; because the inference conveyed by the refused instruction and therefore its effect, would have been to say to the jury that the witness who swore he had put a red light on the material was telling the truth, and therefore that if the light was not there when the accident occurred, it must have been removed by some thief or

meddler.    For these reasons we think no error was committed in refusing to give this instruction.

XI.    Defendant Heman also offered instruction 4a, which, as forecast, the court refused to give. The latter instruction submits to the jury the duty which was upon plaintiff to use ordinary care for his own safety and to that end emphasizes the fact that in ob-
**Contributory Negligence.** serving such duty it is incumbent upon plaintiff to use the faculties and senses which a reasonably prudent person would have exercised under similar circumstances. If plaintiff failed and neglected to use such care, then the court was requested to advise the jury that plaintiff could not recover, notwithstanding the negligence of the defendants.    The court had already given, at the request of defendant city, an instruction which we are of the opinion and have already ruled, *more than covered the ground of the refused instruction.*    Notwithstanding this fact, the verdict went against defendant Heman. For this reason it results that this point should be ruled against defendant Heman, and it follows that as to him the case should be affirmed.

XII.    Coming to plaintiff's insistence that the directed verdict in favor of the Aqua Contracting Company (called for brevity, as stated above, simply the Company) was erroneous, we meet the necessity of referring to some more of the facts.    Defendant Heman,
**Liability of Contractor.** having a number of other contracts with the City of St. Louis for work on its streets of similar sort, was apprehensive that he could not get another contract awarded to him in his own name; therefore, though Heman was neither a stockholder nor an officer of defendant company, and although the company was not engaged in the business of making or performing contracts of the sort here under consideration, Heman without any authority from the Company made a bid for this work in the Com-

pany's name.   This bid was accepted and the contract was awarded to the Company pursuant thereto, and the latter, in order to assist Heman, ratified Heman's action by signing a written contract with the city to do the work and by executing a bond to save the city harmless in certain contingencies, and for faithful and proper performance of the work in all respects.   Thereafter the Company, having proceeded thus far wholly as an accommodation to Heman, turned the entire work over to the latter, without any sub-letting thereof and without any affirmative act of assignment to him of the contract.   In fact, the contract contained a stipulation forbidding any assignment thereof.   Heman did the work for himself under this arrangement, the Company thereafter neither exercising any dominion or control over it, nor receiving nor expecting to receive any share or part of the profits, nor agreeing or expecting to recoup any losses arising from the fulfillment thereof.   When tax-bills were issued in payment for the work, these were made out in the name of the Company, which upon receiving them (if it did receive them, for the matter rests upon inference only) transferred them to one Ruckert, who furnished Heman with the money to carry on the work.   The Company, it seems, was engaged solely in executing sprinkling contracts.   Under an agreement with Heman the latter was to have certain profits over a given amount which the Company might earn upon such *sprinkling contracts,* but it seems that there never were any such profits, and that Heman obtained nothing whatever from the sprinkling contracts.   Under this state of facts, the trial court held that the Company was not liable for Heman's torts while doing the work of replacing the pavement and curbing on Biddle Street.

Clearly, if Heman was not the agent of the Company and doing the work for it the Company is not liable, because there was never any assignment or sub-letting to Heman of the work.   As stated, such assignment and sub-letting were forbidden by the contract

with the city under which the work was done.   The explanations of the officers of the Company and of Heman (and no other evidence, except the contract and bond was offered upon .this question) make the Company the agent of Heman to get the contract for him. Since the Company took neither loss nor profits in the work, it would not be liable in this action upon the theory of its mere agency in getting the contract for Heman.   While the testimony might warrant the inference that in doing the work Heman was the agent of the Company, *he was not sued in such capacity.* No such theory is developed by the petition.   The court ·*nisi* ruled against the liability of the Company.   The plaintiff alleges error, and the burden of proving that error is upon plaintiff.   The cases cited by him in this behalf do not in the remotest way bear out his contention that the Company is liable.   Neither are we told upon what. legal foundation the Company's alleged liability is bottomed.   So, since plaintiff neither sued on the theory of Heman's agency of the Company, nor has cited us authorities showing that the facts proven make him such agent, we are constrained to rely upon the presumption, naught else appearing, that the ruling of the learned trial court was correct.

It results that the case should be affirmed as to defendants Heman and the Aqua Contracting Company, and reversed and remanded as to the defendant City of St. Louis.   Let this be done.   All concur.