[No. 34844. Department One. April 30, 1959.]

DON FLETCHER et al., Respondents, v. THE CITY OF ABERDEEN, Appellant.[1]

[1]Reported in 338 P. (2d) 743.

*Lester T. Parker*, for appellant.

*Paul O. Manley*, for respondents.

FOSTER, J.—This is a personal injury action in which the city of Aberdeen, defendant below, appeals from a judgment for the respondents, plaintiffs below.

For the purpose of placing electric wires underground, the city dug a ditch in the parking strip adjacent to the sidewalk at the intersection of Broadway and Fourth streets in the city of Aberdeen. Suitable barricades were erected to protect pedestrians from falling into the excavation, but, unfortunately, at the time of the mishap in question, one of the city's employees had removed the barriers to facilitate his work in the excavation. When he went elsewhere to work, he negligently failed to replace the barricades, which left the excavation unprotected. In approaching the intersection, the respondent husband, who had been blind since his eighth year, had his kit of piano-tuning tools in his left hand and his cane in his right. With the cane he was cautiously feeling his way. Because the protective barriers had been removed, the existence of the excavation was unknown to the respondent. By the use of the cane, the barriers would have protected the respondent if they had been in place. The jury was entitled to find that the city was negligent in removing the barriers without providing other warning.

Four of the city's assignments of error challenge the sufficiency of the evidence. The city's argument is that it had discharged its duty by the erection of barricades. It may be assumed for present purposes, that the barriers originally erected were sufficient to discharge the city's duty of maintaining its streets and adjacent parking strips in a reasonably safe condition for pedestrian use. However, the city's argument completely ignores the undisputed evidence that its workman had removed the barricades and that the accident in question occurred during this interval. The duty of maintaining the sidewalks and adjacent parking strips is a continuing one. *Peters v. San Francisco*, 41 Cal. (2d) 419, 260 P. (2d) 55; *Crawford v. Wilson & Baillie Mfg. Co.*, 8 Misc. 48, 28 N. Y. S. 514, affirmed 144 N. Y. 708, 39 N. E. 857; *Blessington v. Boston*, 153 Mass.

409, 26 N. E. 1113. The evidence was amply sufficient, therefore, to take the case to the jury, and the court did not err in denying the city's motion challenging the legal sufficiency of the evidence or in the other motions raising the same question.

■ The city assigns error upon the giving of instruction No. 9.[2] The city contends that this instruction places a higher degree of care upon it with reference to the parking strips than the degree of care required as to sidewalks. This argument overlooks instructions Nos. 7 and 7A in which the jury was told that the city was not an insurer and was required only to keep the streets and sidewalks in a reasonably safe condition, that this duty did not require a complete barricade but that only reasonable warning was required, and that it was a question of fact whether the city discharged this duty. The city is required to maintain its parking strips in a reasonably safe condition. *Leonard v. Mel Foster Co.*, 244 Iowa 1319, 60 N. W. (2d) 532; *Wendegatz v. Kansas City Gas Co.* (Mo. App.), 217 S. W. (2d) 269; *Burgess v. Kansas City* (Mo. App.), 242 S. W. (2d) 591; *Rivers v. Town of Wilson*, 233 N. C. 272, 63 S. E. (2d) 544; *City of Holdenville v. Talley*, 205 Okla. 693, 240 P. (2d) 761.

The city assigns error upon the refusal to instruct as requested that "The fact that the plaintiff is blind does not impose on the City any higher degree of care." The court was not dealing with this problem in *Ulve v. Raymond*, 51 Wn. (2d) 241, 317 P. (2d) 908; *Ewer v. Johnson*, 44 Wn. (2d) 746, 270 P. (2d) 813; and *Morehouse v. Everett*, 141 Wash. 399, 252 Pac. 157, 58 A. L. R. 1482, relied upon by the city. The supreme court of Oregon recently commented:

---

[2]"You are instructed that that portion of a city street lying between the sidewalk and the curb, commonly referred to as the parking strip, is as much a part of the public street as any other portion. It is not unlawful for a person to step upon or walk across a parking strip. It is the duty of the municipality to keep its parking strips in a reasonably safe condition so that persons traveling thereon, exercising ordinary prudence and caution, may do so with safety."

· " . · . . . Public thoroughfares are for the beggar on his crutches as well as the millionaire in his limousine. Neither is it the policy of the law to discriminate against those who suffer physical infirmity. The blind and the halt may use the streets without being guilty of negligence if, in so doing, they exercise that degree of care which an ordinarily prudent person similarly afflicted would exercise under the same circumstances. . . ." *Weinstein v. Wheeler*, 127 Ore. 406, 257 Pac. 20.

The statement of the law contained in the requested instruction was adopted by the Kansas City court of appeals in *Hestand v. Hamlin*, 218 Mo. App. 122, 262 S. W. 396, and in prior cases. However, all of them were overruled by the supreme court of Missouri in *Hunt v. St. Louis*, 278 Mo. 213, 211 S. W. 673, and *Hanke v. St. Louis* (Mo. App.), 272 S. W. 933.[3]

■ We think the true rule is the one stated by *Cook v. City of Winston-Salem*, 241 N. C. 422, 85 S. E. (2d) 696:

" . . . 'It is the general rule that those charged with duties respecting the condition of public ways open to pedestrians must exercise due and reasonable care to keep them reasonably safe for travel by the public, including those who are blind or suffer from defective vision or other physical infirmity, disability, or handicap, and are themselves exercising due care, under the circumstances, for their own safety. While a city or other authority or person owes no more than due, ordinary, or reasonable care toward

---

[3]In *Bianchetti v. Luce*, 222 Mo. App. 282, 2 S. W. (2d) 129, the appellate court recognized this fact:

"The city's refused instructions J and K sought to submit that the city's duty was to keep its streets reasonably safe for the *ordinary and usual mode* of travel and that it was not liable for failure to make special provisions required only for the safety of persons traveling with crutches. Under the holding of Bethel v. St. Joseph, 184 Mo. App. 388, Wilkerson v. City of Sedalia, 205 S. W. 877, and Hestand v. Hamlin, 218 Mo. App. 122, all decided by this court, the duty of the city in relation to keeping its sidewalks in repair goes no further than to require it to use ordinary care to keep its streets in reasonably safe condition for travelers passing over them in the *ordinary mode*, while in the exercise of ordinary care, and the city's instructions should have been given. However, these cases, and others upon which they are founded, have substantially been overruled by the Supreme Court in the cases of Hunt v. St. Louis, 278 Mo. 213, and Hanke v. St. Louis, 272 S. W. 933, the Hanke case having been founded upon the Hunt case. . . ."

a blind or other physically afflicted or handicapped pedestrian, in respect of the condition of walkways, the effect of the affliction or handicap may be considered in determining whether the required degree of care has been exercised, which seems a natural conclusion from the premise that such persons have as much right to use such ways as those physically sound, and in harmony with the proposition that the physical condition of the person injured is a proper matter for consideration in determining whether or not he has exercised the degree of care imposed upon him by law, as regards freedom from contributory negligence.' . . ."

Dean Prosser declares[4] that a blind person, or one with physical infirmities, is entitled to live in the world, and that his conduct must be reasonable in the light of knowledge of his infirmity. Dean Prosser's exposition of the law concludes with these two significant sentences:

" . . . It is sometimes said that a blind man must use a greater degree of care than one who can see, but this means nothing more than that he must take the precautions the ordinary reasonable man would take if he were blind. In theory the standard remains the same, but it is sufficiently flexible to take his physical defects into account."

In *Masterson v. Lennon*, 115 Wash. 305, 197 Pac. 38, we approved this view of the law.

The city is charged with knowledge that its streets will be used by those who are physically infirm as well as those in perfect physical condition. The supreme court of Iowa significantly observed in *Balcom v. City of Independence*, 178 Iowa 685, 160 N. W. 305:

"Appellee is, in effect, driven to the position that, because the blind should do more than the seeing to avoid being injured, the city need not take as much care to protect the blind as to protect those who can see. Some color is given this argument because the courts, in laying down the undoubted proposition that due care was exacted of the blind as well as the seeing, and that ordinary care might require more of the blind than those who had their sight, have failed to make clear that the obligation was correla-

[4]Prosser on Torts (2d ed.), 124, 126, § 31.

tive, and that, therefore, even as the blind man should use more precaution because he was blind, whosoever did that which might injure him should use more precautions than would be necessary where the one to be affected was not blind. . . .

" . . . 'the streets are for the use of the general public, without discrimination; for the weak, the lame, the halt and the blind, as well as for those possessing perfect health, strength and vision;' and the law casts upon one no greater burden of care than upon the other. . . ."

The obligations are correlative. The person under a physical disability is obliged to use the care which a reasonable person under the same or similar disability would exercise under the circumstances. The city, on the other hand, is obliged to afford that degree of protection which would bring to the notice of the person so afflicted the danger to be encountered. There was no error, therefore, in the denial of the appellant's requested instruction No. 13.[5]

The remaining assignment of error has to do with the appellant's request to withdraw from the jury the consideration of the respondent's loss of earnings as an item of damage. Such earnings were proved and there was no error in the ruling.

The judgment is, therefore, affirmed.

WEAVER, C. J., DONWORTH, OTT, and HUNTER, JJ., concur.

---

[5]*Davenport v. Ruckman*, 37 N. Y. 568; *Tiddy v. City of Butte*, 104 Mont. 202, 65 P. (2d) 605; *Carter v. Nunda*, 55 App. Div. 501, 66 N. Y. S. 1059; *Victor v. Carbis*, 59 Colo. 92, 147 Pac. 331; *Balcom v. City of Independence*, 178 Iowa 685, 160 N. W. 305; 19 McQuillin, Municipal Corporations, 499, § 54.134; *Rock v. American Constr. Co.*, 120 La. 831, 45 So. 741.

" . . . If the defendants were at fault in leaving an uncovered hole in the sidewalk of a public street, the intoxication of the plaintiff cannot excuse such gross negligence. A drunken man is as much entitled to a safe street, as a sober one, and much more in need of it." *Robinson v. Pioche, Bayerque & Co.*, 5 Cal. 461.