[No. 46462-1-I.   Division One.   April 2, 2001.]

JANICE HOFFSTATTER, *Appellant*, v. THE CITY OF SEATTLE, ET AL., *Respondents*.

598

*Roderick T. McCarvel*, for appellant.

*Mark H. Sidran, City Attorney*, and *Susan J. Holm, Assistant*; *John C. Moore* (of *Bonneville, Viert, Morton & McGoldrick*); and *Kent C. Meyer* (of *Ogden Murphy Wallace, P.L.L.C.*), for respondents.

BAKER, J. — Janice Hoffstatter was injured when she tripped on uneven bricks set in a parking strip. She sued the City of Seattle, the abutting store owner, and the abutting property owner for negligence. Because uneven bricks do not render an area designed for public utility and landscaping unreasonably dangerous and neither the store owner nor the property owner created or maintained the allegedly unsafe condition, we affirm.

Frank Frick owned and operated a secondhand furniture and collectibles store in Seattle. He leased the premises from Michael Peck. Peck's building abuts the sidewalk and parking strip[1] where Hoffstatter fell. The parking strip is entirely bricked over and a lone tree grows in its center. Over time, the tree's roots have dislodged the bricks so that

---

[1] Landscaped area between the sidewalk and the street curb also known as a planting strip.

they are now uneven and some are loose.

A "curb-out" is situated next to the parking strip. It is a section of concrete between the street curb and the sidewalk that provides a means of access from the street to the sidewalk. On occasion, Frick would display furniture on this curb-out. On one such day, Hoffstatter walked across the bricked parking strip toward a display of Frick's furniture. She tripped and fell, injuring herself. She sued Frick, Peck, and the City of Seattle for negligence. The trial court dismissed all her claims on summary judgment. She appeals.

█ We review an order on summary judgment de novo and engage in the same inquiry as the trial court.[2] Summary judgment is appropriate if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law.[3] In reviewing summary judgment, a court considers the facts and reasonable inferences therefrom in a light most favorable to the nonmoving party.[4]

█ Hoffstatter claims that each defendant is liable for negligence because they each failed to maintain the bricked parking strip in a condition safe for pedestrians. To establish a claim of negligence, a plaintiff must show (a) that the defendant owed a duty of care to the plaintiff; (b) the defendant breached that duty; (c) injury to the plaintiff resulted; and (d) the defendant's breach was the proximate cause of the injury.[5] We address the claim against the City of Seattle first.

█ Ms. Hoffstatter argues that the City is liable for her injuries because it failed to maintain the bricked parking strip in a condition suitable for pedestrian use. A municipality is not an insurer of pedestrian safety; however, it

---

[2] *Simpson Tacoma Kraft Co. v. Dep't of Ecology*, 119 Wn.2d 640, 646, 835 P.2d 1030 (1992).

[3] CR 56(c); *Hontz v. State*, 105 Wn.2d 302, 311, 714 P.2d 1176 (1986).

[4] *Hertog v. City of Seattle*, 138 Wn.2d 265, 275, 979 P.2d 400 (1999).

[5] *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991).

must maintain a parking strip in a reasonably safe condition.[6] In *Fletcher v. City of Aberdeen*,[7] the court affirmed judgment for a blind plaintiff who had fallen into a ditch dug by the City in a parking strip and left unbarricaded. In contrast, the court in *Hunt v. City of Bellingham*[8] reversed judgment for a plaintiff who fell into an open meter box installed by the City in a parking strip. The City regularly checked the box, but at the time of the accident, the lid had presumably been removed by children.[9] Although Hunt contended that the lid should have been attached with a hinge and a lock to secure it on the box, the court disagreed and determined that the City had not breached its duty of care.[10]

Beyond *Fletcher* and *Hunt*, no Washington case law further defines what constitutes a "reasonably safe condition" on parking strips. Generally, however, a reasonably safe condition is not the same for a parking strip as it is for a sidewalk because their purposes are different.[11] In contrast to a sidewalk, which is devoted almost exclusively to pedestrian use, parking strips frequently contain such objects as power and communication poles, utility meters, and fire hydrants. As in this case, parking strips frequently are used for beautification, such as grass, shrubbery, trees or other ornamentation.[12] It is certainly true that pedestrian use of parking strips must be anticipated. But they are not sidewalks and cannot be expected to be maintained in the same condition.[13]

██ In this case, the uneven surface of the bricks was caused by tree roots growing beneath the bricks and dis-

---

[6] *Fletcher v. City of Aberdeen*, 54 Wn.2d 174, 177, 338 P.2d 743 (1959).

[7] 54 Wn.2d 174, 388 P.2d 743 (1959).

[8] 171 Wash. 174, 17 P.2d 870 (1933).

[9] *Hunt*, 171 Wash. at 176-77.

[10] *Hunt*, 171 Wash. at 177.

[11] C.S. Patrinelis, Annotation, *Liability for Injury on Parking or Strip Between Sidewalk and Curb*, 19 A.L.R.2d 1053, 1059-60 (1951).

[12] Patrinelis, *supra*, at 1060.

[13] Patrinelis, *supra*, at 1055, 1060.

lodging them. It is a common condition in an area set aside for landscaping. Further, the bricks were not hidden, but open and obvious. It is reasonable to expect that a pedestrian will pay closer attention to surface conditions while crossing a landscaped parking strip than when walking on a sidewalk. We hold that as a matter of law the uneven surface of the bricks was not unreasonably dangerous.

██ ██ Hoffstatter next contends that because Frick displayed his wares in the curb-out, he created a dangerous condition by making it likely that customers would traverse the parking strip to reach the display. Whether a defendant owes a duty of care is a question of law.[14] A person in control of property abutting a public sidewalk is not an insurer of pedestrian safety.[15] However, when that person uses a sidewalk for his own special purposes, he has a corresponding duty to maintain the walk in a reasonably safe condition for its usual and customary usage by pedestrians.[16]

In *Stone v. City of Seattle*, an apartment owner was held liable for injuries a pedestrian sustained when she fell into a hole in the sidewalk created by the weight of cars driving consistently over it.[17] The court reasoned that because it was foreseeable that tenants would drive directly over the sidewalk to reach their parking spaces rather than taking a circuitous route, the driving constituted a special use.[18] Likewise in *Edmonds v. Pacific Fruit & Produce Co.*, the court affirmed judgment for a plaintiff who fell into a depression in the sidewalk created by the owner driving repeatedly over the sidewalk and causing its deterioration.[19]

---

[14] *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48-49, 914 P.2d 728 (1996).

[15] *Stone v. City of Seattle*, 64 Wn.2d 166, 170, 391 P.2d 179 (1964).

[16] *Edmonds v. Pac. Fruit & Produce Co.*, 171 Wash. 590, 593, 18 P.2d 507 (1933).

[17] 64 Wn.2d 166, 168, 391 P.2d 179 (1964).

[18] *Stone*, 64 Wn.2d at 169.

[19] 171 Wash. 590, 591, 18 P.2d 507 (1933). *See also Turner v. City of Tacoma*, 72 Wn.2d 1029, 435 P.2d 927 (1967) (summary judgment for defendant reversed

In both of these cases, the occupier of adjacent property caused the defective condition, and that condition existed in the surface of the sidewalk itself. By contrast, in this case the claimed defect was not caused by Frick, nor was it located on the sidewalk. However, Frick did use the curb-out portion of the sidewalk to display his wares, which does constitute a special use. And it was foreseeable that pedestrians attracted to the display might cross the parking strip to reach it. Consequently, we hold that Frick's special use gave rise to a duty of care to keep the area immediately surrounding his display reasonably safe for pedestrians. But contrary to Hoffstatter's contention, Frick's actions did not convert the parking strip into a sidewalk. Because we hold as a matter of law that the condition of the parking strip was not unreasonably dangerous, Frick's actions breached no duty owed to Hoffstatter.

Hoffstatter finally seeks to hold Michael Peck liable because he allegedly maintained the bricks in an uneven condition. An owner whose property abuts a public right-of-way may be liable for negligence if he fails to exercise reasonable care when he uses the sidewalk for his own special purposes.[20] But Peck used neither the sidewalk nor the parking strip for any purpose. Hoffstatter argues that occasional replacement of a dislodged brick constitutes a special use. Although Washington case law is silent on the subject, *Contreras v. Anderson*[21] is persuasive. In *Contreras*, the court rejected a plaintiff's attempt to hold an abutting property owner liable for her injuries when she fell on a bricked portion of a planting strip.[22] The court held that although an owner who exerts control over city-owned

---

where plaintiff collided with fire escape extending into her pathway on city sidewalk); *Groves v. City of Tacoma*, 55 Wn. App. 330, 777 P.2d 566 (1989) (use of public sidewalk as exit from driveway gave rise to duty of reasonable care); *James v. Burchett*, 15 Wn.2d 119, 129 P.2d 790 (1942) (abutting property owner owed duty of care to pedestrian who slipped and fell on gravel accumulated on sidewalk because of vehicles exiting from owner's graveled driveway).

[20] *Stone*, 64 Wn.2d at 170.

[21] 59 Cal. App. 4th 188, 69 Cal. Rptr. 2d 69 (1997).

[22] Also known as a parking strip.

land is liable for dangerous conditions upon it, "neighborly maintenance" in the form of trimming trees, sweeping leaves and gardening does not constitute "control" that would give rise to a duty of care.[23] Likewise, Peck's occasional maintenance in the form of resetting dislodged bricks does not constitute a special use giving rise to a duty of care to Hoffstatter.

■■ Hoffstatter alternatively argues that Peck is liable on a theory that he was negligent in directing his tenant to utilize the curb-out and to display his wares. But we have already held that Frick breached no duty owed to Hoffstatter. Moreover, it is well settled that a landlord owes no greater duty to the invitees or guests of his tenant than he owes to the tenant himself.[24] A landlord is liable to a tenant for harm caused by

(1) latent or hidden defects in the leasehold

(2) that existed at the commencement of the leasehold

(3) of which the landlord had actual knowledge

(4) and of which the landlord failed to inform the tenant.[25]

Here, the bricked parking strip was not part of the leasehold and even if it were, the condition of the bricks was neither hidden nor defective in light of the intended use of the parking strip.

Affirmed.

KENNEDY and COX, JJ., concur.

---

[23] *Contreras*, 69 Cal. Rptr. 2d at 75, 77.

[24] *Frobig v. Gordon*, 124 Wn.2d 732, 735, 881 P.2d 226 (1994).

[25] *Frobig*, 124 Wn.2d at 735 (citations omitted).