[No. 60933-5-I.   Division One.   July 21, 2008.]

DA JUANA MICKEY WILSON, *Appellant*, v. THE CITY OF SEATTLE ET AL., *Respondents*.

*Thomas M. Geisness* and *Robert A. Clough* (of *Geisness Law Firm*), for appellant.

*Thomas A. Carr, City Attorney*, and *Stephanie P. Dikeakos, Assistant*, for respondents.

¶1 PER CURIAM — Da Juana Wilson sued the City of Seattle (City), claiming it was negligent for failing to maintain a manhole cover located on a parking strip in a reasonably safe condition and for failing to discover, correct, and warn of the hazard. The trial court granted summary judgment in favor of the City. We affirm. Wilson did not make a showing sufficient to establish essential elements of her case.

## FACTS

¶2 Wilson was injured when she stepped on a manhole cover that flipped, causing her to fall into the manhole. She sued the City because the manhole was located on a parking strip on City property.

¶3 The City moved for summary judgment, arguing that the manhole cover on the parking strip was not unreasonably dangerous as a matter of law and, even if it was dangerous, the City was not liable because it did not have notice of that condition. In support, the City submitted the declaration of a City claims coordinator, Rick Eilman. He searched City records and determined that no one had complained about the manhole cover before Wilson's accident. He said that the cast iron cover is 19 inches in diameter and weighs approximately 75 pounds. When properly placed, the word "WATER" on the cover faces up. Eilman indicated that a field crew that checked the cover a few months after Wilson's accident found "no movement" and made no repairs. Later, when Eilman himself inspected the cover, he found it upside down, but it wobbled only slightly when he jumped on it. When he placed the cover over the hole correctly with the word "WATER" facing up, it lay flat and did not wobble when he jumped on it.

¶4 In addition to Eilman's declaration, the City submitted portions of Wilson's deposition testimony in support of its motion for summary judgment. Wilson was shown photographs of three different views of the manhole cover. In one, the cover lay flat with the word "WATER" facing up. In another, the word "WATER" was facing up, but the manhole cover was tipped. In the third picture, the cover was upside down. Wilson said that before she stepped on the manhole cover, it appeared to be properly placed and was not tipped. She also said that whenever she had noticed the manhole cover while passing it before the accident, which she did at least once a week, the cover appeared to be properly placed.

¶5 The trial court granted summary judgment in the City's favor and dismissed Wilson's action. This appeal followed.

## ANALYSIS

¶6 The City argued it was entitled to summary judgment because the manhole cover was not unreasonably dangerous as a matter of law and, even if it was, the City was not liable because it did not have notice of the manhole cover's condition. We agree.

¶7 An appellate court reviewing a grant of summary judgment engages in the same inquiry as the trial court. *Degel v. Majestic Mobile Manor, Inc.*, 129 Wn.2d 43, 48, 914 P.2d 728 (1996). Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." CR 56(c); *Degel*, 129 Wn.2d at 48. The facts and all reasonable inferences from those facts must be considered in the light most favorable to the nonmoving party. *Degel*, 129 Wn.2d at 48.

¶8 The moving party bears the initial burden of showing the absence of an issue of material fact. *Young v.*

*Key Pharms., Inc.*, 112 Wn.2d 216, 225, 770 P.2d 182 (1989). If the moving party meets this initial showing and is a defendant, the burden shifts to the plaintiff. *Young*, 112 Wn.2d at 225. At that point, if the plaintiff fails to make a showing sufficient to establish an essential element of his case, the trial court should grant the summary judgment motion because there can be no genuine issue of material fact; a complete failure of proof concerning an essential element of the plaintiff's case renders all other facts immaterial. *Young*, 112 Wn.2d at 225. The nonmoving party may not rely on speculation or argumentative assertions that unresolved factual issues remain. *Marshall v. Bally's Pacwest, Inc.*, 94 Wn. App. 372, 377, 972 P.2d 475 (1999).

¶9 To prove negligence, the plaintiff must establish (1) a duty owed to the complaining party, (2) breach of that duty, (3) resulting injury, and (4) proximate cause. *Christen v. Lee*, 113 Wn.2d 479, 488, 780 P.2d 1307 (1989). The existence of duty is a question of law. *Hutchins v. 1001 Fourth Ave. Assocs.*, 116 Wn.2d 217, 220, 802 P.2d 1360 (1991).

¶10 A municipality has a duty to maintain its parking strips in a reasonably safe condition. *Fletcher v. City of Aberdeen*, 54 Wn.2d 174, 177, 338 P.2d 743 (1959). What constitutes a reasonably safe condition on a parking strip is not the same as it is for a sidewalk because a sidewalk's purpose is mainly pedestrian use, while a parking strip frequently contains utility poles and meters, fire hydrants, trees, grass, and other ornamentation. *Hoffstatter v. City of Seattle*, 105 Wn. App. 596, 600, 20 P.3d 1003 (2001).

¶11 The trial court in *Hoffstatter* held that a parking strip containing a tree surrounded by bricks that had buckled was not unreasonably dangerous as a matter of law. This court affirmed. Our opinion in *Hoffstatter* supports the trial court's ruling granting summary judgment in this case. There, we reasoned that the bricks were obvious and their uneven surface, which was caused by tree roots dislodging them, was a common condition in a landscaped area. *Hoffstatter*, 105 Wn. App. at 601. Moreover, pedestri-

ans can be expected to pay closer attention while crossing a landscaped parking strip than while walking on a sidewalk. *Hoffstatter*, 105 Wn. App. at 601. Under those circumstances, this court held that the trial court properly granted summary judgment on the issue whether the bricked parking strip was unreasonably dangerous. *Hoffstatter*, 105 Wn. App. at 601.

¶12 Based upon the reasoning in *Hoffstatter*, the trial court in the case before us properly granted summary judgment in favor of the City on the issue of whether the manhole cover was unreasonably dangerous. Manholes in parking strips are common, and the cover was open and obvious. In fact, Wilson acknowledged that she had seen the manhole cover on many occasions and it lay flat with the word "WATER" facing up whenever she noticed it.

¶13 Wilson argues that her fall itself is proof that the City did not maintain the manhole cover in a reasonably safe condition because she stepped on it, it flipped, and she fell. But no one had ever complained about the manhole cover in the past, so the City had no notice there was a problem of any kind. Wilson herself said that the cover always appeared to be properly placed when she passed it before her accident. She, therefore, failed to establish that the City knew of the dangerous condition and was negligent for failing to correct, repair, or warn of it.

¶14 *Hunt v. City of Bellingham*, 171 Wash. 174, 17 P.2d 870 (1933), is instructive. Nellie Hunt was injured when she fell into a water-meter box on a parking strip maintained by the City of Bellingham. The box had a wooden lid that weighed approximately 10 pounds. Inside was a meter with a clock-like dial. Hunt testified that about a year before her accident, children were in the habit of playing near the meter box. They liked to remove the lid to see the dial. Hunt notified a city water department foreman more than a year before her accident that the lid did not fit well, although she had never actually seen the lid off. She asked the foreman to put on hinges and a lock to secure it. The city installed a new box with a lid that could not slide off

and needed a pick to be removed, which it inspected every month, and it appeared to be in good repair. Hunt apparently believed that the city should have installed a box with an iron cover, or one on hinges that could be locked. But no one complained about the new box after it was installed more than a year before Hunt's accident. Under those circumstances, Hunt failed to establish that the city breached its duty of reasonable care. *Hunt*, 171 Wash. at 177.

¶15 Similarly, Wilson failed to establish that the City breached its duty of care. No one had complained about the manhole cover before Wilson's accident. Moreover, although the manhole cover provides access to a water valve, there is no evidence to establish how long before Wilson's accident City employees had accessed the valve. One may speculate that a City employee improperly positioned the manhole cover, but Wilson did not provide evidence showing more probably than not that the City's negligence caused her injuries. Without any evidence showing that the City knew or had reason to know that the manhole cover was a danger, or evidence from which one could infer that a City employee placed the cover improperly, we can only speculate that the City's negligence was a proximate cause of Wilson's injuries. Because the nonmoving party may not rely on speculation to defeat a motion for summary judgment, *Marshall*, 94 Wn. App. at 377, the trial court properly granted summary judgment.

## CONCLUSION

¶16 Wilson failed to meet her burden to show that a genuine issue of material fact precluded summary judgment. The decision of the trial court is affirmed.