[No. 36898.   Department One.   April 9, 1964.]

SAMUEL E. STONE *et al., Respondents,* v. THE CITY OF
SEATTLE, *Respondent and Cross-appellant,* HOWARD
M. BUCK *et al., Appellants.** 

*Reported in 391 P. (2d) 179.

*Erik Froberg,* for appellants.

*A. C. Van Soelen, John A. Logan,* and *Robert Ward Freedman,* for respondent and cross-appellant.

*Warner, Pierce & Peden,* for respondents.

HUNTER, J.—Samuel E. Stone and wife brought this action against Howard M. Buck and wife, the owners of the Randolph Apartments, and the city of Seattle, for personal injuries sustained in a fall on a defective sidewalk.

On the evening of December 11, 1960, Mr. and Mrs. Stone (plaintiffs-respondents), visited their son, a tenant in the apartment. They had never been there before. When leaving the apartment that evening at 7:20 p.m., Mr. Stone fell in a hole on the public sidewalk in front of the apartment house, sustaining the injuries complained of. It was dark, windy and rainy, the lighting was poor, and the hole in the sidewalk was full of water, causing the surface to appear even. The hole was irregular in size, about 12 inches long, 7 inches wide, and 7 inches deep. The apartment house is located at the southwest corner of the intersection of 13th Avenue and Denny Way in Seattle.

The sidewalk was built in 1908. It was badly cracked, and the earth support under it had washed away leaving an appreciable gap between the concrete and the earth beneath. There was testimony that the hole had been in the sidewalk for several months, and that one witness had fallen there before. The hole was near some parking places on the apartment house owners' property, and there was evidence that some of the tenants had driven their cars over the sidewalk to reach the 16-foot-wide parking area maintained by the apartment house owners.

The trial court ruled that the city of Seattle (defendant-cross-appellant) was negligent as a matter of law; that the plaintiffs were not contributorily negligent; and a verdict was directed against the city. The jury returned a verdict against Buck and wife (defendants-appellants). This appeal followed. For convenience, Samuel E. Stone will be referred to as the sole plaintiff.

■ The apartment house owners assign error to the court's instruction on the issue of whether the tenants caused the defect by driving cars over the sidewalk. They contend there is insufficient evidence to justify the giving of this instruction. The record does not support this argument. Several witnesses testified that the situation around the apartment house was congested, and that cars frequently drove over the sidewalk to reach the two adjacent parking stalls. This constituted substantial evidence and entitled the court to give the instruction.

■ The apartment house owners urge that it was error to instruct the jury that a reasonably prudent apartment house owner either knew or should have known that his tenants would drive over the sidewalk; that such knowledge and the failure to take proper remedial action would be negligence. It is argued that there was a proper way to use the parking "slots," and that if the tenants used the space improperly by crossing the sidewalk, it was solely their responsibility.

The record discloses that when Mr. Buck paved the parking area, he knew that there were only 16 feet from the

apartment house wall to the sidewalk. He also knew, or should have known, that two normal automobiles because of the "squeeze" would probably drive over the sidewalk. Control of the area was retained by the landlord and was not in the tenants. He paved it, rented the spaces, and posted a sign stating that unauthorized cars would be impounded. It was proper for the jury to be instructed that the owners should have reasonably foreseen that some cars would drive over the sidewalk. When the trial judge denied the owners' motion to dismiss, he correctly summed up the evidence on this point as follows:

" . . . here we have Mr. Buck, one of the defendants, making a special use on part of the property, out of which he profits; he makes some gain. There is testimony here that cars, of course, didn't always take the circuitous route; some of them drove right across the sidewalk. In fact, the testimony was that they drove over the curbing across the sidewalk to get into the parking area. There is further testimony, also of the same witness, that in the event an unauthorized vehicle was parked in this area, Mr. Buck would have seen that it would be towed away.

"Now, certainly human nature is not going to follow the circuitous route in parking there. They are going to take the shortest route to arrive at their particular destination. You can anticipate and expect they will cross onto the pedestrian walk which is placed there by the City. You have an area there something over 16 feet at the most. You park two vehicles side by side in that area and you are going to be getting on the sidewalk, and I think certainly from circumstantial evidence you can infer that because they have to be able to open doors to get in and out of the vehicles. . . ."

The apartment house owners assign error to the refusal of the trial court to instruct the jury that a property owner, abutting a city sidewalk, has no duty to notify the city or warn any traveler of defects. The trial court's instruction on this point stated that although mere ownership of property abutting a sidewalk creates no duty to maintain the sidewalk, an abutting owner can be found liable if he negligently creates or maintains a defect which proximately causes an injury.

■ An abutting owner is not an insurer of pedestrians, but he must exercise reasonable care when he uses the sidewalk for his own special purposes. *Collais v. Buck & Bowers Oil Co.*, 175 Wash. 263, 27 P. (2d) 118 (1933); *Edmonds v. Pacific Fruit & Produce Co.*, 171 Wash. 590, 18 P. (2d) 507 (1933). In *James v. Burchett*, 15 Wn. (2d) 119, 129 P. (2d) 790 (1942), we said:

"Where a sidewalk is used by one, in control of abutting property, as a driveway for vehicles, the special use, though lawful, carries with it the duty to use reasonable care that the use does not create conditions rendering it unsafe for the passing thereon of pedestrians. . . ."

Applying this rule to the facts of the instant case, the instruction given was sufficient and proper, and the requested instruction was properly refused.

The city of Seattle contends that the trial court erred when it directed a verdict in favor of the plaintiff against the city. The city argues the court could not find, as a matter of law, that the defect was in the sidewalk for a long enough period of time to constitute notice against the city; that from the record this was a factual issue which should have been submitted to the jury.

■ Several witnesses testified that, although they had been in the vicinity, they did not see the hole in the sidewalk prior to the accident. On the other hand, several witnesses did see the hole prior to the accident. One witness, who traveled the sidewalk every day, testified that the hole was there in September, and that it kept getting worse all during the fall months. Another witness fell in the hole several weeks before the accident. The trial court was of the opinion, as we are, that there was no conflict of evidence as to the existence of the hole. It is true that the defense produced five witnesses who testified that they did not see the defect. However, none of the witnesses testified that the hole was not there. In view of the physical facts and the positive testimony concerning the existence of the hole, we hold that there was not room for reasonable minds to differ. The defect did exist, and it was present for a sufficient period of time to constitute constructive notice

against the city. *Skaggs v. General Elec. Co.*, 52 Wn. (2d) 787, 328 P. (2d) 871 (1958). The directed verdict was proper.

■ The city contends the facts are in dispute on the issue of contributory negligence and that the trial court erred in withdrawing this issue from the jury. In *Blasick v. Yakima*, 45 Wn. (2d) 309, 274 P. (2d) 122 (1954), we stated:

"Applicable to this case are our holdings that: (a) A pedestrian on a sidewalk who has no knowledge to the contrary may proceed on the assumption that the city has performed its full duty and has kept the sidewalk in a reasonably safe condition. (*Kennedy v. Everett, supra* [2 Wn. (2d) 650, 99 P. (2d) 614 (1940)]; *Clevenger v. Seattle* (1947), 29 Wn. (2d) 167, 186 P. (2d) 87); (b) a pedestrian is not required to keep his eyes on the walk immediately in front of him at all times (*James v. Burchett* (1942), 15 Wn. (2d) 119, 129 P. (2d) 790; *Clevenger v. Seattle, supra*); (c) the fact that there is something in a pedestrian's path which he could see if he looked and which he does not see because he does not look, does not constitute contributory negligence as a matter of law unless there is a duty to look for that particular thing. (*Hines v. Neuner* (1953), 42 Wn. (2d) 116, 253 P. (2d) 945)."

In this case the record shows the following undisputed facts: The plaintiff was walking normally on a dark night; he had not been over this sidewalk before; he was unaware of the defect in the sidewalk; there was a heavy wind and it was raining very hard; the hole was filled with water; the area was in a shadow from the street light; visibility was below normal and it was extremely dark. From this evidence, we hold that the trial judge did not err in withdrawing the issue of contributory negligence from the jury.

■ The city assigns error to the trial court's refusal to admit the testimony of an expert on sidewalk construction. In his offer of proof to the trial court, the city's attorney stated that the expert would testify this break in the concrete could have been caused only by the weight of an automobile on the sidewalk. The city now argues on this appeal that the excluded testimony was relevant to the issue of notice. We fail to see the materiality of this testi-

mony in determining when the break occurred. According to the offer of proof, the excluded testimony was relevant only in an action between the city and the abutting property owner. Early in the trial, the trial judge denied a motion by the city to amend its pleadings to include a request for a judgment over against the property owner, and this issue is not now in the case. The ruling of the trial court was correct. *Cochran v. Harrison Memorial Hospital,* 42 Wn. (2d) 264, 254 P. (2d) 752 (1953).

The trial court instructed the jury that the award of damages for loss of future earnings was not to be reduced by reason of any payments from a collateral source, such as social security payments or veterans' pensions; that "these payments should have no bearing on your deliberations." It is contended that the trial court erred by giving the quoted portion of the instruction.

██ An instruction must be read in its entirety and error cannot be predicated upon a part of the instruction taken out of context. It is well established that the fact a plaintiff receives, from a collateral source, payments of this nature which have a tendency to mitigate the consequences of the injury that he otherwise would have suffered, may not be taken into consideration when assessing the damages the defendant must pay. *Heath v. Seattle Taxicab Co.,* 73 Wash. 177, 131 Pac. 843 (1913); *A. H. Bull S.S. Co. v. Ligon,* 285 F. (2d) 936 (1960); 75 A.L.R. (2d) 885; 15 Am. Jur., Damages § 198. It is argued, however, that the plaintiff's social security benefits would be cut off or reduced if he earned more than $1,200 a year, and that he may try to earn less in order to receive more benefits. This argument is unrelated to the assignment of error and goes only to the weight of the evidence on the proof of the plaintiff's diminished earning capacity.

██ It is argued that the trial court committed error when it allowed plaintiff's expert witness, Dr. J. Harold Brown, to give his opinion whether plaintiff's injuries would permanently affect his ability to play musical instruments. The plaintiff is a Seattle music teacher, and must have good control of his hands and fingers. The rule is well established

in this state that physicians testifying as experts may give their conclusions as to whether or not the plaintiff is able to follow a gainful work or occupation. *Metsker v. Mutual Life Ins. Co. of New York,* 12 Wn. (2d) 618, 123 P. (2d) 347 (1942). In this case the doctor was qualified as an expert. He testified that the percentage of the plaintiff's disability is substantially greater than if he were a laborer, since finger dexterity is essential to a musician. The testimony was proper.

We find no error. The judgment is affirmed.

OTT, C. J., HILL, ROSELLINI, and HALE, JJ., concur.