[No. 33998-6-II. Division Two. January 17, 2007.]

CAROL SEIBER, *Appellant*, v. POULSBO MARINE CENTER, INC., ET AL., *Respondents*.

732

*John D. Terry II*, for appellant.

*Donald C. Harrison* and *Robert D. Reinhard*, for respondents.

¶1 PENOYAR, J. — Carol Seiber appeals a summary judgment order dismissing her negligence claim against retailer Poulsbo Marine Center, Inc. (PMC) and its landlord, John Xenos. Seiber was standing outside PMC's store, looking at merchandise displayed on the wooden walkway, when she fell down several stairs and suffered injuries. The trial court granted Xenos and PMC's motion for summary judgment. We affirm because Seiber has not established a genuine issue of material fact regarding Xenos's or PMC's liability.

## FACTS

¶2 Seiber, a resident of Boise, Idaho, was visiting Poulsbo, Washington, with her husband, Roger,[1] on May 26, 2001. As they walked through town, they stopped in front of PMC to look at merchandise it had displayed on the boardwalk outside the store. The boardwalk ran the length of the building where PMC leased its retail space from Xenos. Two steps, leading down to the street, ran along the length of the boardwalk opposite the building. Seiber fell down these steps, sustaining serious leg and ankle injuries. She later sued PMC and Xenos.

---

[1] We use his first name in this opinion to avoid confusion. We mean no disrespect.

¶3 Seiber's initial complaint alleged that PMC's display "filled a large area of the thoroughfare and left minimal space for pedestrian travel on the sidewalk." Clerk's Papers (CP) at 4. She claimed that she "was injured while attempting to negotiate her way through the defendants [sic] display items and other pedestrians." CP at 4. She alleged that the boardwalk was defective, negligently maintained, and inherently dangerous because it had no handrails and the uneven surface and stairs lacked distinguishing colors or textures. She also alleged that the boardwalk "was made even more dangerous by the positioning of items for sale which blocked pedestrian traffic and pushed them [sic] towards uneven surfaces and stairs." CP at 4.

¶4 In his deposition, Roger testified that he did not actually see his wife fall because it happened so quickly. "One moment we were standing there together; the next moment she was on the pavement." CP at 40-41. Roger returned the next day to photograph the location, but he did not measure the stairs. He was not certain precisely how far PMC's merchandise protruded onto the boardwalk on the day of the incident.

¶5 Seiber did not remember any specifics about her fall. She thought the boardwalk was too narrow but did not recall any defects in the boardwalk or the steps. She concluded, "If everything would have been right, I wouldn't have fallen." CP at 195. According to Seiber, either the merchandise was taking up part of the boardwalk or the boardwalk was too narrow.

¶6 Xenos moved for summary judgment, arguing that Seiber had not raised an issue of material fact regarding his duty to maintain the premises. He included a declaration from a surveyor who stated that, according to a 1977 survey, Xenos's property line ended at the building's face and did not include the boardwalk or steps, which were owned by the city or Port of Poulsbo. PMC joined Xenos's summary judgment motion.

¶7 Seiber later submitted a supplemental declaration stating that she had recently reviewed the ambulance

report and now remembered more about her fall. She remembered walking along the boardwalk and stopping at PMC to look at the merchandise that "extended well onto the walkway," and she claimed she did not realize that there were steps. CP at 353. She asserts that because there were no handrails or "other indication that the boardwalk was too narrow to accommodate foot traffic, what with all the merchandise on the boardwalk, [she] tripped and fell off the steps." CP at 353.

¶8 Seiber also submitted a declaration from Bryan Jorgensen, an accident investigator, who opined that PMC's activities (i.e., placing items for sale on the boardwalk) contributed to Seiber's perception that she had a greater area in which to maneuver. He also stated that PMC and Xenos had failed to maintain the property and to warn pedestrians to use care when there was merchandise placed around the building's entrance.

¶9 Additionally, Seiber submitted a declaration from Arden M. Newbrook, an architect, who stated that "[n]either the [stairs'] treads nor the risers have consistent dimensions." CP at 240. He stated that the building's "means of egress system" did not comply with building codes because the stairs lacked handrails and their tread construction was irregular. CP at 241. He noted other code violations, such as a lack of exit signage, improper door height, improper threshold height, and lack of disabled access. Newbrook also stated that the boardwalk was not wide enough for a pedestrian walkway because it was less than 3 feet wide, whereas the Uniform Building Code (UBC) required pedestrian walkways to be at least 44 inches wide. UBC § 409.4 (1997).

¶10 Newbrook concluded that he did not have enough information to make concrete assessments about the accident's initial cause but stated that code compliance would have reduced the potential for a fall and that placing wares near the door could have contributed to the accident.

¶11 Xenos moved to strike the declarations Seiber submitted in response to the motion for summary judgment.

The trial court denied the motion but granted the motion for summary judgment, finding there were no genuine issues of material fact. Seiber now appeals the summary judgment order, and Xenos[2] cross-appeals the denial of his motion to strike the declarations.

## ANALYSIS

### I. STANDARD OF REVIEW ON SUMMARY JUDGMENT

¶12 We review summary judgment orders de novo, performing the same inquiry as the trial court. *Hisle v. Todd Pac. Shipyards Corp.*, 151 Wn.2d 853, 860, 93 P.3d 108 (2004). In conducting this inquiry, we must view all facts and reasonable inferences in the light most favorable to the nonmoving party. *Hisle*, 151 Wn.2d at 860. Summary judgment is proper where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Hisle*, 151 Wn.2d at 861.

¶13 The nonmoving party is entitled to have the evidence viewed in a light most favorable to him and against the moving party. *Herron v. Tribune Publ'g Co.*, 108 Wn.2d 162, 170, 736 P.2d 249 (1987). However, if the plaintiff, as the nonmoving party, can offer only a "scintilla" of evidence, evidence that is "merely colorable," or evidence that "is not significantly probative," the plaintiff will not defeat the motion. *Herron*, 108 Wn.2d at 170. Moreover, conclusory statements in a plaintiff's affidavit are insufficient; the plaintiff must demonstrate the basis for his or her assertions. CR 56(e); *Herron*, 108 Wn.2d at 170.

¶14 The party opposing a motion for summary judgment may not rely on speculation, on argumentative assertions that unresolved factual issues remain, or on having its affidavits considered at face value. *Seven Gables Corp. v. MGM/UA Entm't Co.*, 106 Wn.2d 1, 13, 721 P.2d 1 (1986). The nonmoving party must set forth specific facts that sufficiently rebut the moving party's contentions and dis-

---

[2] PMC adopts by reference this portion of Xenos's brief.

close that a genuine issue as to a material fact exists. *Seven Gables*, 106 Wn.2d at 13. Ultimate facts or conclusions of fact are insufficient; conclusory statements of fact will not suffice. *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 359-60, 753 P.2d 517 (1988).

## II. ARGUMENTS REGARDING DUTY AND BREACH

### A. Duty To Maintain the Boardwalk

¶15 Seiber asks us to consider the boardwalk to be a sidewalk and claims that, despite PMC and Xenos's lack of ownership, they owed the same duty of care toward the boardwalk as an adjoining landowner or occupier has to maintain a public sidewalk. She also argues that PMC is responsible for the boardwalk's condition because it made a special use of the boardwalk by displaying its merchandise there, so it had a duty to ensure that no unsafe condition was created there.

¶16 Seiber also contends that PMC and Xenos intended to control the boardwalk to the detriment or exclusion of the public and of the city and Port of Poulsbo, and that this exclusion makes it fair and reasonable to hold PMC and Xenos liable for her injuries.

### B. Boardwalk's Condition

¶17 Seiber next argues that PMC and Xenos breached their duty to prevent an unreasonable risk of harm arising from the boardwalk's condition. She asserts that the boardwalk and steps were defective because there was no visual distinction between the levels and steps of the boardwalk and stairs, and she states that she was not able to clearly see or perceive the risk of danger that the cluttered, defective boardwalk presented. Because the defect was not open and obvious, she claims that she was not put on notice of the hazardous condition.

¶18 According to Seiber, Xenos is liable as the property owner because it was foreseeable that PMC's display of

merchandise on the boardwalk would create a hazardous condition to boardwalk users and to the store's invitees.

¶19 Seiber also asserts that the building's exit was defective because it did not conform with the UBC and that Xenos breached his duty as an owner by leasing out a building with a defective exit.

### C. Proximate Cause

¶20 Finally, Seiber argues that summary judgment was improper because she established the proximate cause of her fall. Although she could not remember details when she gave her deposition, she claims that her subsequent declarations described in sufficient detail how her injury occurred.

### III. ANALYSIS OF SUMMARY JUDGMENT RULING

¶21 We affirm the trial court's summary judgment order because as a matter of law, Seiber failed to establish that PMC and Xenos could have breached a duty toward her.

¶22 In order to maintain an action for negligence, a plaintiff must show that (a) the defendant owed a duty of care to the plaintiff, (b) the defendant breached that duty, (c) injury to the plaintiff resulted, and (d) the defendant's breach was the proximate cause of the injury. *Hoffstatter v. City of Seattle*, 105 Wn. App. 596, 599, 20 P.3d 1003 (2001). Whether a defendant owes a duty of care is a question of law. *Hoffstatter*, 105 Wn. App. at 601.

¶23 A person in control of property abutting a public sidewalk is not an insurer of pedestrian safety. *Hoffstatter*, 105 Wn. App. at 601. However, when that person uses a sidewalk for his own special purposes, he has a corresponding duty to maintain the walk in a reasonably safe condition for its usual and customary pedestrian usage. *Hoffstatter*, 105 Wn. App. at 601.

¶24 PMC was using the boardwalk for its own special purposes by displaying its merchandise outside its store and, therefore, it had a duty of care to keep the area

immediately surrounding its display safe for pedestrians. *See Hoffstatter*, 105 Wn. App. at 601-02. However, Seiber has not demonstrated a potential breach of that duty as a matter of law.

¶25 Seiber does not allege that the merchandise display caused a defect to develop in the boardwalk. This contrasts with the cases she cites in which the defendant's special use gave rise to a physical defect that caused injury. *Stone v. City of Seattle*, 64 Wn.2d 166, 391 P.2d 179 (1964) (apartment owner liable when tenants put a hole in the sidewalk by driving over it to reach their parking spots); *James v. Burchett*, 15 Wn.2d 119, 126-27, 129 P.2d 790 (1942) (defendant was liable for allowing gravel from its car lot to be carried onto the sidewalk); *Edmonds v. Pac. Fruit & Produce Co.*, 171 Wash. 590, 590-91, 18 P.2d 507 (1933) (defendant's heavy trucks damaged the sidewalk by using it as a driveway); *Groves v. City of Tacoma*, 55 Wn. App. 330, 777 P.2d 566 (1989) (defendant's business invitees damaged the sidewalk by driving over it). In each of these cases, the respective defendants were liable for a pedestrian's injuries because their special use of the sidewalk caused dangerous conditions to form.

¶26 In contrast, Seiber does not allege that PMC's merchandise warped the boardwalk or damaged the boards in any way. Instead, she alleges that the boardwalk was deficiently designed and built. Because she does not draw a causal connection between PMC's use of the boardwalk and the alleged defects, Seiber has not shown any possible breach of duty through PMC's special use. To the extent that the boardwalk may have been unsafe for pedestrians because of a defective design, Seiber has a cause of action against the entity (either the city or Port of Poulsbo) responsible for the boardwalk. She does not have a cause of action against the owner or occupier of the adjacent building.

¶27 Furthermore, although she alleges that PMC's merchandise "filled a large area of the thoroughfare," she does not provide specific facts about where the merchandise was

or how much room was left on the boardwalk. In her supplemental declaration, Seiber states that she tripped, but not because of PMC's merchandise. In fact, she never expressly alleged that any acts of the defendants caused her to fall. Therefore, she has not sufficiently created a factual question of PMC's or Xenos' liability. *Grimwood*, 110 Wn.2d at 360 (conclusory statements of fact will not suffice to defeat a motion for summary judgment).

¶28 Finally, any potential risk to pedestrians posed by the merchandise placed near the stairs was obvious. The stairs ran the length of the building. Seiber had to have ascended the stairs to get to the boardwalk and was therefore on notice that she was standing near a set of stairs when she stopped to inspect the merchandise. Where an alleged dangerous condition is both obvious and known to a plaintiff, the defendants owe no duty to warn of this condition. *See Mele v. Turner*, 106 Wn.2d 73, 80, 720 P.2d 787 (1986) (owner of lawnmower did not owe a duty to warn that placing one's hand near the spinning blade was dangerous).

¶29 In view of our decision to affirm the summary judgment order, we need not address Xenos's cross-appeal claiming that the trial court erred in considering the supplemental declarations of Seiber and her experts.

¶30 Affirmed.

ARMSTRONG and QUINN-BRINTNALL, JJ., concur.