IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| HARMONY L. A. WHITE, a single woman, | ) ) ) | No. 32230-1-III |
| Appellant, | ) ) | |
| v. | ) ) | UNPUBLISHED OPINION |
| MOSES LAKE SCHOOL DISTRICT NO. 161, a Washington State Public School District, | ) ) ) ) | |
| Respondent. | ) ) | |

FEARING, J. — Harmony White suffered injuries when she stepped onto a sidewalk and slipped on broken bits of concrete. The sidewalk abutted a school operated by the Moses Lake School District, and parents and the district's school buses used the sidewalk as a loading and unloading zone. Vehicles sometimes bumped the sidewalk's curb. Harmony White sued the school district for negligently maintaining the walk. The trial court dismissed the suit on summary judgment because no evidence showed the school district's use of the abutting sidewalk caused the dangerous condition. We affirm on the same ground.

## FACTS

We recite the facts in a light most advantageous to Harmony White.

Harmony White fell on a sidewalk along C Street in Moses Lake in May 2008. Midway Learning Center, operated by the Moses Lake School District, used this abutting sidewalk as a "bus drive area." Clerk's Papers (CP) at 59. Eight school buses a day used the bus drive. Parents used the area to deliver and retrieve students. In total, the area saw about 150 passenger arrivals and departures daily during each of the 180 school days in a year. Trucks also used the bus drive to deliver materials.

The Midway Learning Center custodian would snow blow or de-ice the C Street sidewalk, and school maintenance personnel otherwise attended to the walk. School Principal Chris Hendricks described much of the sidewalk as being uneven, and he explained how the school district attempted to level offending sections:

> Q. Okay. Now, according to discovery responses provided by the district, it states that they had a—the district had a district wide effort to work on potential sidewalk hazards.
> Were you part of that effort?
> A. I was one of the people that nagged really hard that we had uneven sidewalks.
> Q. Okay. So when you say uneven sidewalks, if you look at Picture No. 3, where there's a depression there, is that kind of what you're talking about?
> A. Actually—
> Q. Or—
> A. —in that that same picture, No.3, you can see an area where the concrete surface has—has been shaved down.
> Q. Okay.
> A. That would be a sample of the abrasion technique that they use to level the sidewalk.
> Q. Okay.
> A. There was—that was the focus of the remedy to—to level them.
> Q. Okay.

2

A. I think that we still have a few places where because of the weather and whatever else there may be sunken areas.

Q. Okay. Is that kind of like—well, you know, like as in 3, for example, of a break and just a chunk just sinks in farther, is that what you're talking about?

A. Yeah.



CP at 69-70, 77. If Principal Hendricks noticed gravel on the sidewalk, he prepared a maintenance work order to remove the stone as soon as snow was no longer likely.

In 2008, the C Street sidewalk was in general disrepair. One photograph presented to the trial court showed the C Street curb with a chunk missing and some broken sidewalk chips strewn about. Another picture depicted bits of broken sidewalk, forming a gravel-like cover, scattered throughout the sidewalk. One photograph showed a black stripe along the top of the curb consistent with a tire rubbing the curb.

Midway Principal Chris Hendricks testified that parents' vehicles may have bumped the C Street curb. School district transportation manager John Eschenbacher testified that the district trains its bus drivers to maintain a two inch distance from the

curb. Nevertheless, according to Eschenbacher, drivers, despite the training, sometimes bumped a curb in the regular course of picking up kids. If a curb bump scuffed a tire, the bus driver received additional training. Eschenbacher believed most scuffing incidents took place at schools other than Midway.

On May 24, 2008, about 7:30 p.m., Harmony White arrived at First Presbyterian Church on C Street across from Midway Learning Center. She intended to participate in Moses Lake's Spring Fest Moonlight Parade. When called to queue for the parade, White decided to first use the restroom. The portable toilets were located across C Street on the sidewalk that the school uses as a bus drive. White ran toward the portable toilets. As White stepped onto the sidewalk with her right foot, she fell on her side. She testified that the sidewalk felt like marbles. She immediately slid with her right foot and could not catch herself. As she slipped, Harmony White's left foot remained off the curb, so the slippery area must have been near the curb. She never saw any gravel.

Upon her fall, Harmony White hit her face on the pavement. She also suffered abrasions on her hand where she tried to catch her fall and a road rash down her left leg.

Emergency medical personnel placed Harmony White in a cervical collar, placed her on a backboard, and transported her by ambulance to Samaritan Hospital in Moses Lake. Thereafter, White underwent multiple reconstructive surgeries to her face.

When he learned of Harmony White's fall, Principal Chris Hendricks commented "perhaps now . . . they will clean up the sidewalk." CP at 83-84. Nevertheless, the

4

school district had no notice of any loose gravel or sand in the area where White fell.

PROCEDURE

Harmony White filed suit against Moses Lake School District claiming that the district negligently maintained the sidewalk abutting the Midway Learning Center. The school district moved for summary judgment, arguing, (1) it had no duty to maintain the sidewalk abutting its property, and (2) no evidence showed the school district caused White's fall. The district contended that no facts linked the sidewalk "gravel" to any actions of the school.

In response to the summary judgment motion, Harmony White countered that the school district operated a bus drive area along the sidewalk and used the walk for its own purposes. It did so knowing its buses struck the curb and wreaked damage to the sidewalk. According to White, the school district allowed uneven surfaces to remain on the walkway even after it took steps to level the walk. The district allowed concrete chips and gravel to remain on the surface. White asserted that the heavily trafficked bus drive combined with a lack of maintenance caused or contributed to the sidewalk's unsafe condition. The school district replied that White failed to show that the school district's use of the walk and buses bumping against the curb caused the gravel that resulted in White's fall to accumulate on the sidewalk.

The trial court granted the school district's motion for summary judgment. The trial court noted that mere ownership of property abutting a sidewalk created no duty to

maintain the sidewalk. Nevertheless, evidence showed the school district put the walk to special use, which created a duty. The duty extended to exercising reasonable care to ensure that the use did not create conditions rendering the sidewalk unsafe for passing pedestrians. The trial court concluded that Harmony White failed to present evidence causally linking the school district's use of the sidewalk to the gravel that caused her injury.

## LAW AND ANALYSIS

Harmony White asks this court to reverse the trial court's grant of summary judgment. This court reviews a trial court's order granting summary judgment de novo, performing the same inquiry as the trial court. *Seiber v. Poulsbo Marine Ctr., Inc.*, 136 Wn. App. 731, 736, 150 P.3d 633 (2007). We construe all facts and reasonable inferences in the light most favorable to the nonmoving party. *Lybbert v. Grant County*, 141 Wn.2d 29, 34, 1 P.3d 1124 (2000); *Seiber*, 136 Wn. App. at 736. Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to a judgment as a matter of law. CR 56(c).

The moving party must first show the absence of an issue of material fact. *Ingersoll v. DeBartolo, Inc.*, 123 Wn.2d 649, 654, 869 P.2d 1014 (1994). The burden then shifts to the nonmoving party to set forth specific facts showing a genuine issue for trial. *Ingersoll*, 123 Wn.2d at 654. If the nonmoving party fails to offer sufficient evidence of an element essential to her case, then the trial court should grant summary

judgment. *Hines v. Data Line Sys., Inc.*, 114 Wn.2d 127, 148, 787 P.2d 8 (1990).

To survive summary judgment, the nonmoving party must set forth specific facts that rebut the moving party's contentions and that posit a genuine issue as to a material fact. *Seiber v. Poulsbo Marine Ctr. Inc.*, 136 Wn. App. at 736-37. The nonmoving party may not rely on speculation or argumentative assertions, nor may it have its affidavits considered at face value. *Seiber*, 136 Wn. App. at 736. A fact, for purposes of opposing a summary judgment motion, is an event, an occurrence, or something that exists in reality. *Grimwood v. Univ. of Puget Sound, Inc.*, 110 Wn.2d 355, 359, 753 P.2d 517 (1988). It is what took place, an act, an incident, a reality as distinguished from supposition or opinion. *Grimwood*, 110 Wn.2d at 359. "Facts" needed to defeat a motion for summary judgment are evidentiary in nature. *Grimwood*, 110 Wn.2d at 359.

Harmony White sued Moses Lake School District No. 161 for negligence. In order to maintain an action for negligence, a plaintiff must show (a) that the defendant owed a duty of care to the plaintiff, (b) the defendant breached that duty, (c) injury to the plaintiff resulted, and (d) the defendant's breach was the proximate cause of the injury. *Seiber*, 136 Wn. App. at 738. Duty and causation are at issue in this appeal. Whether a defendant owes a duty of care is a question of law. *Seiber*, 136 Wn. App. at 738.

Harmony White asks this court to affirm a ruling below that the Moses Lake School District used the C Street sidewalk for its own special purpose, namely as a bus drive. White further argues that, because of the special use, the school district held a

7

general duty to maintain the sidewalk in a condition safe for passing pedestrians. In response, the school district argues the lower court made no such ruling and, furthermore, its use of the sidewalk constituted usual and customary pedestrian usage.

We agree with the school district to the extent that Harmony White contends that special use was decided as a matter of law by the trial court. Instead, the trial court ruled there was a question of fact and that facts presented in opposition to the summary judgment motion could lead a trier of fact to conclude the school district put the sidewalk to a special use. We decline to address the school district's contention that it did not make a special use of the sidewalk. We disagree with Harmony White that any special use created a duty to maintain the sidewalk at large. We conclude that, regardless of a special use, the school district's duty only extended to care for conditions created by its special use and White failed to present evidence that the use caused the condition in the sidewalk that led to her injuries. Therefore, Moses Lake School District is entitled to summary judgment on this alternate ground.

A person in control of property abutting a public sidewalk is not an insurer of pedestrian safety nor does it generally owe a duty to maintain the walk. *Hoffstatter v. City of Seattle*, 105 Wn. App. 596, 601, 20 P.3d 1003 (2001); *Stone v. City of Seattle*, 64 Wn.2d 166, 170, 391 P.2d 179 (1964). However, when that person uses a sidewalk for his own special purposes, he has a duty to maintain the walk in a reasonably safe condition for its usual and customary pedestrian usage. *Seiber v. Poulsbo Marine Ctr.*

8

*Inc.*, 136 Wn. App. at 738 (2007); *Hoffstatter v. City of Seattle*, 105 Wn. App. at 601.

The Moses Lake School District's use of the C Street sidewalk included the unloading each school day of eight school buses full of pupils, parents leaving and retrieving children along the curb, and deliveries from large trucks. Harmony White contends this routine use imposed upon the district a general duty to maintain the sidewalk. This is not the rule in Washington.

Our Supreme Court has consistently ruled that the duty of a landowner making a special use of a walkway is the duty to use reasonable care that the use *does not create* conditions rendering it unsafe for the passing thereon of pedestrians. *Stone v. City of Seattle*, 64 Wn.2d at 170; *James v. Burchett*, 15 Wn.2d 119, 124, 129 P.2d 790 (1942). A reading of Washington decisions shows that the adjacent landowner has been held liable only when its use created the dangerous condition. For example in *James v. Burchett*, the landowner's car lot used the sidewalk for its private convenience and the use carried gravel from the lot to the walkway. The landowner knew of the condition because an employee held the duty to sweep the sidewalk each morning. The successful plaintiff slipped and fell on the gravel.

A controlling decision is *Seiber v. Poulsbo Marine Ctr. Inc.*, 136 Wn. App. 731 (2007). Poulsbo Marine Center displayed merchandise on a boardwalk outside its store. The walkway had two steps along its side farthest from the store. Although the walk was flush with the store building, the City of Poulsbo owned the walkway. Seiber fell down

the steps and injured herself. She submitted an affidavit from an expert who opined that the merchandise display confused Seiber's sense of perception such that she believed she had a larger area in which to walk than was present in actuality. Another expert opined that the stairs were dangerous. This court nonetheless affirmed a summary judgment dismissal in favor of Poulsbo Marine Center, since Seiber lacked evidence that any dangerous condition created by the special use of the boardwalk caused her to fall.

Harmony White offers sufficient evidence to prove that the sidewalk was in a state of disrepair. But White forwards only argument and speculation that the school district's use created the disrepair. White argues that, from photographs, a jury could reasonably infer that pieces of concrete are from damaged and unmaintained curbing and joints in the sidewalk, which would allow the concrete to chip away into pebbles on the walking surface of the sidewalk. Assuming such to be true, however, there is no evidence linking the condition to any special use of the sidewalk by the school district. Principal Chris Hendricks and Transportation Manager Eschenbacher agree school buses sometimes bump into the sidewalk curbing and could account for black marks seen in a photograph viewed by them at their depositions. But White lacks evidence that bumping of the curb caused any of the loose gravel where she fell.

The gist of our ruling is that, as a matter of law, no breach of duty by the Moses Lake School District caused Harmony White's fall. Proximate cause requires a plaintiff to prove both legal causation and cause in fact. *Lowman v. Wilbur*, 178 Wn.2d 165, 169,

10

309 P.3d 387 (2013). To establish cause in fact, a claimant must establish that the harm suffered would not have occurred but for an act or omission of the defendant. There must be a direct, unbroken sequence of events that link the actions of the defendant and the injury to the plaintiff. *Joyce v. Dep't of Corr.*, 155 Wn.2d 306, 322, 119 P.3d 825 (2005). Cause in fact is usually a question for the jury. *Joyce*, 155 Wn.2d at 322. But the court may decide this question as a matter of law if the causal connection is so speculative and indirect that reasonable minds could not differ. *Moore v. Hagge*, 158 Wn. App. 137, 148, 241 P.3d 787 (2010). If there is nothing more tangible to proceed on than two or more conjectural theories under one or more of which a defendant would be liable and under one or more of which a plaintiff would not be entitled to recover, a jury will not be permitted to conjecture how the accident occurred. *Gardner v. Seymour*, 27 Wn.2d 802, 809, 180 P.2d 564 (1947). The cause of an accident is considered speculative when, from a consideration of all the facts, it is as likely that it happened from one cause as another. *Moore v. Hagge*, 158 Wn. App. at 148.

As the trial court aptly summarized, Harmony White "seems to argue" that because the disintegration in the sidewalk either appeared or worsened after school buses began bumping into the curb, that bumping either caused or contributed to the disintegration. CP at 139. Nevertheless, only conjecture, rather than evidence, supports this theory. No expert testified to how much the vehicles using the bus drive weighed, the velocity at which they might have bumped the curb, or how vast the resulting damage

11

might have been. No witness testified to a vehicle bumping the curb and the sidewalk immediately or subsequently cracking at the point of contact. We do not even know if a bus or some other vehicle bumped the curb before the deterioration. The evidence does not show a direct, unbroken sequence of events that link bumping the curb to the sidewalk's disintegration. Thus, a jury would have to speculate as to whether curb bumping caused sidewalk deterioration.

The few pictures in the record show the greatest accumulation of broken chips of sidewalk to be furthest from the curb. Two photographs show severe cracking away from the curb, suggesting, as the trial court noted, that another cause, such as normal, repeated use, and exposure to the elements caused the disrepair. The trial court thus properly kept a jury from conjecturing how the accident occurred.

## CONCLUSION

We affirm the summary judgment order dismissing Harmony White's lawsuit with prejudice.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Fearing, J.

WE CONCUR:

_____
Siddoway, C.J.

_____
Korsmo, J.

12