# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| AHSSON and KARI SPRY, a married couple, individually and on behalf of K.A.S., M.A.S., and G.J.S., minors, | No. 46782-8-II |
| Appellants, | |
| v. | |
| PENINSULA SCHOOL DISTRICT, "JOHN and JANE DOES 1-25, BELLEVUE POLICE DEPARTMENT, JAY JOHNSON, BRENDA JOHNSON, JOHN KIVLIN, MICHELLE KIVLEN, and DOES 1-25, | UNPUBLISHED OPINION |
| Respondents. | |

MELNICK, J. — This case arises out of a complaint alleging race and national origin discrimination and negligence against Peninsula School District (PSD) for acts that occurred between 2006 and 2013. Ahsson and Kari Spry[1] appeal the trial court's orders denying the Sprys' motion to continue the discovery deadline and granting summary judgment to PSD.[2] We affirm the trial court.

---

[1] For clarity, we refer to individuals in the Spry family by their first names or initials, and to the appellants generally as "the Sprys." No disrespected is intended.

[2] PSD argues that we should not consider the Sprys' retaliation claim. We agree. First, the Sprys did not argue retaliation below. RAP 9.12 ("On review of an order granting or denying a motion for summary judgment the appellate court will consider only evidence and issues called to the attention of the trial court."); *see also* RAP 2.5(a)(3). Second, the Sprys do not argue retaliation in their appellate brief. RAP 10.3(a)(6).

FACTS

The Sprys have three children: K.A.S., M.A.S., and G.J.S. Beginning in the 2006-07 school year, the Sprys enrolled one or more of the children in PSD. Ahsson and the three children are African American. Kari is not but she brought suit on behalf of her minor children.

On September 27, 2013, the Sprys filed a complaint against PSD. They alleged racial and national origin discrimination in violation of the Washington Law Against Discrimination (WLAD), negligence for failing to protect their children from racial hostility, and negligent infliction of emotional distress. They alleged that the incidents involved two principals, two school counselors, seven teachers, multiple staff members, and a prior superintendent. They also alleged that their children were subjected to disparate disciplinary reporting and disciplinary treatment, that the school made unfounded reports to Child Protective Services (CPS), that the language in the reports shows they were made because of racial bias, and that the family was unjustly transferred to another school within the district.

The reports included a CPS report, initiated by a school nurse, in which Ahsson was noted to be a "Danger to Worker." Clerk's Papers (CP) at 120. The same report stated in answer to "'Social/Economic Factors': The family is of Muslim faith. Referrer has heard Ahsson having trouble in the area of employment. Referrer doesn't know if either parent is employed. The family was searched and not found in ACES." CP at 122.

A second CPS report stated, "Ahsson is allegedly under investigation by LE [law enforcement] and school was alerted that he is a 'dangerous' person." CP at 144. The second report recounts a CPS worker's contact with the principal at the school saying, "Mr. Spry is a large African American who drives a Lotus. An off duty law enforcement officer got into a shouting match with Mr. Spry in school parking lot. [The principal] states African American's are not

accepted very well in Gig Harbor. [The principal] states she has not had any problems with the family. She is very supportive of the family." CP at 146. A third CPS report stated that Ahsson does not use physical discipline with his children but he does sometimes take away their privileges or have them sit on their knees.

PSD also completed a "Report of Suspected Child Abuse or Neglect" form that stated K.A.S. was extremely tired and had said, "I went to bed at 1:00. I am tired. I was up partying with my dad." CP at 126. Another PSD form reported, "unexplained bruises, absences; student saying 'Dad gave me the scar on my arm. It was an accident.'" CP at 134. Yet another form completed by PSD reported bruises on M.A.S.'s face and smaller bruises on his arms. On the same form, M.A.S. allegedly reported to a teacher, "Dad put him in the dark bathroom for 'chewing my nails.'" CP at 142. In another form, a principal from one of the schools the children attended stated,

> Mother stopped me in grocery store on Sunday. Explained black eye, worried we might report. Said boys were just rough housing. Black Eye. Father was in school after picking up 2 boys. Father said he had 'belt' used on him they have been under a microscope because of neighbor. So father said he (pointing to son [K.A.S]) sometimes takes care of him (pointing to son [M.A.S.]) for me. This was heard by me and 3 office staff.

CP at 152.

PSD answered the complaint in December and among other affirmative defenses, pleaded that the negligence claim was subsumed by the discrimination claim. PSD served the Sprys with interrogatories in January 2014. The Sprys replied that they could not respond to the interrogatories without legal assistance, would seek legal assistance, needed to contact other resources for information, and would supplement their response in future. The record indicates that they did not supplement their response at a later time.

PSD deposed Kari and Ahsson. In Kari's deposition she stated her basis for asserting discrimination included information provided to CPS that related to her family's religion, that her request to have their children transfer classes was not addressed as timely as another person's request, and that the school discriminated in its discipline of her children. Kari acknowledged that the substance of the reports to CPS was true; however, she disagreed with the individuals' judgment to make the reports. She believed some of the information provided was unnecessary and therefore discriminatory, such as the fact that her husband drove a "Lotus." CP at 93. Kari admitted she lacked information about the school's treatment of other students and legal reporting requirements. She also acknowledged she lacked information about how school procedures were applied to non-African American families.

In his deposition, Ahsson stated he believed his children were transferred to a new school because they are African American. He said that "[e]xperience" formed the basis for believing the treatment he received was racial. CP at 101. He did not know if Caucasian parents received different treatment or if people he came into contact with at PSD were affiliated with PSD.

On August 7, 2014, the day before the discovery cut-off date, the Sprys filed a motion in which they requested the court extend discovery and continue the September 25 trial date. The request to extend discovery stated, "Counsel for [PSD] was contacted via e-mail on August 1, 2014 with this request and such request was denied. It is our hope, with the Court's intervention this request can be granted." CP at 22.

A few days later, in opposition to the Sprys' motion, PSD stated that the Sprys frequently missed deadlines. On August 11, 2014, PSD also filed a motion for summary judgment. It argued that the Sprys' claims failed to establish a prima facie case for discrimination and the negligence and negligent infliction of emotional distress claims were duplicative of and based on the same

4

facts as the discrimination claim. It further contended the Sprys "failed to provide any evidence to support their discrimination claim beyond their own feelings, speculation and conjecture." CP at 27.

The Sprys responded to the motion for summary judgment on September 2, 2014. In the response, they requested additional time for discovery because they had not "propounded discovery on [PSD]." CP at 203. Kari, Ahsson, K.A.S, and M.A.S. filed declarations in opposition to summary judgment. Kari attached to her declaration copies of the CPS reports, the school forms, and also e-mails from and progress reports completed by officials at PDS about her sons. Kari acquired the CPS documents through a records request in 2010. Kari also attached e-mail correspondence and other documents chronicling her families' issues with another family at PSD, her communications to PSD officials expressing concerns about her children, and about how PSD treated Ahsson.

The e-mails reference problems between Ahsson and a parent named John Kivlin who worked for the Bellevue Police Department. Among other issues, Kari and Ahsson expressed concern that Kivlin knocked on Ahsson's car window and said "turn that n***** music down" and "I'm gonna make this guy[']s life a living hell." CP at 128. Also, in another e-mail exchange between Kari and an official at PSD, Kari expressed concern that Ahsson had been told he had to wait in his car to pick up G.J.S. In response, the school official stated, "We apologize for any miscommunication that may have occurred that may have led you to think otherwise. As we indicated, the interest of the District is safety of all students . . . As per your request, Mr. Brooks will provide a map/drawing of the site indicating where it is recommended that people gather for student pick up." CP at 184.

In his declaration, Ahsson stated that "[i]n the 2006-2007 school year, [a counselor] discussed with me how he had grown up and heard the 'N' word frequently. He suggested that I take my family to Charles Wright Elementary as 'there were more uppity blacks' like me at that school." CP at 192. Ahsson also stated that one of his son's teachers called him in to talk and acknowledge that race was an issue throughout Gig Harbor. In K.A.S.'s declaration, he stated, "I am African-American and believe I was discriminated against because of that." CP at 187. K.A.S. was 13-years-old at the time. He also provided that he felt he was treated differently than other students, his teacher did not let him watch "The Ruby Bridges movie" and did not tell him why, he was not allowed to play with another African American friend, he was not allowed to play with his brother, and he had another African American friend who told him he experienced racism at a different elementary school. M.A.S., also 13-years-old at the time of his declaration, stated that he did not see any other students turning in a "slip" after recess.[3] CP at 200.

In its reply in support of its motion for summary judgment, PSD pointed out that the Sprys' response did not oppose the dismissal of the negligence claims. PSD also opposed the request for more time and noted that the Sprys did not clearly request relief under CR 56(f) to gain additional time for discovery, but the request was "essentially a CR 56(f) continuance." CP at 215.

The trial court held a hearing on the motions on September 15, 2014. During argument, Kari opined that instances where the school reported to CPS demonstrated discrimination. The trial court denied the Sprys' motion to extend the time for additional discovery. It also granted

---

[3] This statement seems to be in reference to one of his teachers trying a "positive/consequence program," in which M.A.S. was to "deliver his yellow evaluation slips to [the recess supervisor] at the beginning of each week with dates written on them" and "catch up with [the recess supervisors] at the end of recess to get a yellow slip." CP at 171.

PSD's motion for summary judgment. The Sprys appeal the order denying the motion to continue the discovery deadline and the order granting summary judgment.

ANALYSIS

I.      DISCOVERY

The Sprys assert the trial court erred by denying their motion to continue in order to obtain discovery. We disagree.

The trial court has wide discretion in ordering pretrial discovery, which we will not disturb absent a manifest abuse of discretion or a showing that the trial court based its order on untenable grounds or for untenable reasons. *Demelash v. Ross Stores, Inc.*, 105 Wn. App. 508, 519, 20 P.3d 447 (2001). In other words, the trial court abuses its discretion only if no reasonable person would have ruled as the court did. *In re P'ship of Rhone & Butcher*, 140 Wn. App. 600, 606, 166 P.3d 1230 (2007).

A CR 56(f) motion is appropriate when affidavits are unavailable.

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that, for reasons stated, the party cannot present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

CR 56(f). We review a trial court's ruling on a CR 56(f) motion for a continuance for manifest abuse of discretion. *Molsness v. City of Walla Walla*, 84 Wn. App. 393, 400, 928 P.2d 1108 (1996). The trial court does not abuse its discretion if: (1) the requesting party does not offer a good reason for the delay in obtaining the desired evidence; (2) the requesting party does not state what evidence would be established through the additional discovery; or (3) the desired evidence will not raise a genuine issue of material fact. *Turner v. Kohler*, 54 Wn. App. 688, 693, 775 P.2d 474 (1989).

7

Because the Sprys filed both a request to extend pretrial discovery and a CR 56(f) motion, it is unclear which they appeal; however, we conclude that the trial court did not abuse its discretion. The court considered that the Sprys missed many deadlines and did not communicate openly about the delays in discovery beyond asking for a payment plan for an amount owed to PSD based on a motion to compel. The Sprys did not clearly articulate what evidence would be established through further discovery. They did not demonstrate that the discovery they sought would raise a genuine issue of material fact. They did state in their response to PSD's motion for summary judgment, "Plaintiff's also should have an opportunity to receive disciplinary records on all students to compare whether treatment to their kids was equal to that of their peers." CP at 204. However, Kari admitted to the court that she had not conducted any discovery. Kari informed the court that it had been a financial hardship to conduct discovery. Yet, the original motion to extend was filed the day before the discovery cut-off date. In addition, the motions hearing took place on September 15, 2014, one year after the Sprys filed their complaint and nine months after PSD served them with interrogatories.

Based on all of the facts, the trial court did not abuse its discretion.

II.     MOTION FOR SUMMARY JUDGMENT

The Sprys argue the trial court erred by granting PSD's motion for summary judgment because material facts were in dispute. We disagree.

A.     Standard of Review

We review a summary judgment order de novo, engaging in the same inquiry as the trial court. *Woods v. H.O. Sports Co. Inc.*, 183 Wn. App. 145, 148, 333 P.3d 455 (2014). Summary judgment is appropriate when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. CR 56(c); *Ranger Ins. Co. v. Pierce County*, 164 Wn.2d

545, 552, 192 P.3d 886 (2008). We review the facts and reasonable inferences in the light most favorable to the nonmoving party. *Seiber v. Poulsbo Marine Ctr., Inc.*, 136 Wn. App. 731, 736, 150 P.3d 633 (2007).

To avoid summary judgment, the nonmoving party must offer specific facts rebutting the moving party's contentions and disclosing the existence of material issues of fact. *Loeffelholz v. Univ. of Wash.*, 175 Wn.2d 264, 271, 285 P.3d 854 (2012). If the nonmoving party fails to demonstrate that a material fact remains in dispute, and reasonable persons could reach but one conclusion from all the evidence, then summary judgment is proper. *Vallandigham v. Clover Park Sch. Dist. No. 400*, 154 Wn.2d 16, 26, 109 P.3d 805 (2005).

"A material fact is one upon which the outcome of the litigation depends in whole or in part." *Atherton Condo. Apartment-Owners Ass'n Bd. of Dirs. v. Blume Dev. Co.*, 115 Wn.2d 506, 516, 799 P.2d 250 (1990). The nonmoving party may not rely on speculation or argumentative assertions. *Ranger Ins. Co.*, 164 Wn.2d at 552. The nonmoving party must present competent evidence by affidavit or otherwise. *Bldg. Indus. Ass'n of Wash. v. McCarthy*, 152 Wn. App. 720, 735, 218 P.3d 196 (2009). Additionally, "[i]f the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to his case, then the trial court should grant the motion." *Atherton Condo.*, 115 Wn.2d at 516.

B.      Discrimination Claim

The Sprys contend that they provided "ample evidence" to prove intentional racial discrimination. Br. of Appellant at 8. They argue that the trial court improperly heightened their burden, requiring them to produce "a gun smoking with the fumes of racial bias." Br. of Appellant at 10. We disagree.

The right to be free from discrimination because of race, creed, color, or national origin includes the "right to the full enjoyment of any of the accommodations, advantages, facilities, or privileges of any place of public resort, accommodation, assemblage, or amusement." RCW 49.60.030(1)(b). A cause of action based on discrimination has shifting burdens of proof. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973); *Fulton v. Dep't of Soc. & Health Servs.*, 169 Wn. App. 137, 148, 279 P.3d 500 (2012). The Sprys carried the initial burden to prove a prima facie case. *Scrivener v. Clark Coll.*, 181 Wn.2d 439, 446, 334 P.3d 541 (2014).

The plaintiff "'must do more than express an opinion or make conclusory statements'" and must establish "specific and material facts to support each element of his or her prima facie case." *Fulton*, 169 Wn. App. at 147 (quoting *Hiatt v. Walker Chevrolet Co.*, 120 Wn.2d 57, 66, 837 P.2d 618 (1992)). To establish a prima facie case for race or national origin discrimination in public accommodations, the plaintiff must show: (1) the plaintiff is a member of a protected class; (2) the defendant's establishment is a place of public accommodation; (3) the defendant discriminated against plaintiff by not treating him in a manner comparable to the treatment it provides to persons outside that class; and (4) the protected class status was a substantial factor causing the discrimination. *Demelash*, 105 Wn. App. at 525. Where the plaintiff fails to establish a prima facie case, the defendant is entitled to judgment as a matter of law. *Kirby v. City of Tacoma*, 124 Wn. App. 454, 464, 98 P.3d 827 (2004).

The Sprys argue generally that the trial court dismissed several "key pieces of evidence" during summary judgment. Br. of Appellant at 10. As a threshold issue, the Sprys do not indicate in their brief the evidence the trial court allegedly disregarded, making review of their arguments challenging. Additionally, the Sprys argue that the trial court viewed the evidence presented in a

"piecemeal fashion" and improperly weighed credibility.  Br. of Appellant at 10.  However, the order granting summary judgment demonstrates, and the verbatim report of proceedings supports, that the trial court considered the memorandums, depositions, declarations, and other evidence presented.  Therefore, we conclude the record does not support this argument.

Further, the Sprys argue that "the only issue is whether plaintiffs have produced evidence to support an inference of discrimination for purposes of summary judgment, as necessary to satisfy the second and fourth elements of the prima facie case."  Br. of Appellant at 8.  However, based on a review of the record and the briefing, it appears the Sprys' argument relates to the third and fourth elements listed above.  The Sprys contend, "[T]he sole question is whether a reasonable juror could draw an inference of discrimination from the direct and circumstantial evidence presented."  Br. of Appellant at 9.  First, this contention is an incorrect statement of the law. And second, the cases cited by the Sprys are all federal cases[4] but they still support the correctness of the trial court's rulings under Washington law regarding the burden in a discrimination case.  The trial court properly articulated the Sprys' burden of proof:

---

[4] *See e.g.* Br. of Appellant at 8-9 (citing *Com. of Pa. v. Flaherty*, 983 F.2d 1267, 1273 (3d Cir. 1993) ("It is now well established that a *prima facie* showing of discriminatory intent may be proven indirectly, without a 'smoking gun,' on the 'totality of the relevant facts,' including disparate impact *if* coupled with some other indicia of purposeful discrimination."); *Sheridan v. E.I. DuPont de Nemours & Co.*, 100 F.3d 1061, 1071-72 (3d Cir. 1996) ("In making [a finding of discrimination], the jury must perform its traditional function of assessing the weight of the evidence, the credibility of the witnesses through observation of both direct testimony and cross-examination at trial, and the strength of the inferences that can be drawn from the elements of the prima facie case and the evidence that undermines the employer's proffered reasons for its actions."); *Brewer v. Quaker State Oil Ref. Corp.*, 72 F.3d 326, 330 (3d Cir. 1995) ("Thereafter, the nonmoving party creates a genuine issue of material fact if it provides sufficient evidence to allow a reasonable jury to find for him at trial.")).

> In order to defeat a summary judgment, the plaintiff must present specific and material facts as to each and every element of the prima facie case and cannot rely on opinion and conclusory statements without evidence of differential treatment other than opinion subjective feelings and conclusory statements which is what I find in the response from the plaintiff.

Report of Proceedings (RP) at 20.

Turning to the evidence provided, the parties do not dispute the first two elements, i.e., that the Sprys are members of a protected class and that the schools the children attended are places of public accommodation. However, the Sprys contend they established a genuine dispute of material fact as to elements three and four: disparate treatment and causation.

It seems that the Sprys based their discrimination claim against PSD on the CPS reports about their children and disciplinary measures used against them. However, they did not demonstrate any disparate treatment between their family and other families. When the court specifically asked Kari for evidence that her family was treated differently, she responded, "All I have [is] . . . a submission of the principal at Harbor Heights, and it discussed where she did not feel we had been given the information that other parents would be given as regards to progressive discipline." RP at 13. She then acknowledged that she did not submit the letter to the court. Kari also referenced language in the CPS reports mentioning that African Americans are not welcome in Gig Harbor, that her husband drives a Lotus, and that her family is of Muslim faith. This evidence does not show that the Sprys were treated differently from persons outside of the protected class. Through declarations, depositions, and other attachments, the Sprys did not provide evidence of comparators to satisfy the third element.

Additionally, Kari seemed to argue at summary judgment that an e-mail showed the children were transferred to a different school within the district for reasons other than poor attendance and behavior issues, the official reasons provided to them. During the motions hearing,

Kari cited an e-mail from Kivlin to the school. She read a portion of the e-mail to the court that included the following:

"We came to Gig Harbor to get away from garbage like this family. They do nothing but form negativity throughout the community and school. My family means everything to me. If one of these kids or the parents say anything to my family, I will ask you to have both these kids expelled immediately. There is getting to be too much friction with this situation which can only get worse. If this is not done, I will have no problem going about my business to inform whoever wants to know about it. I will also go after your job. I believe in you and believe in what you want is best for every child, but there comes a time when you have to, quote, cut out the cancer or it takes over the whole body and kills it. Just in summary, I'm not threatening anyone. I just want what is best for my family and my community. Thank you for your time."

RP at 12. This e-mail in itself does not establish that PSD discriminated against the Sprys because of their status as African Americans or Muslims. Additionally, the e-mail is from a parent, not an official of the school.

Even viewing the evidence in the light most favorable to the Sprys, we conclude that the Sprys failed to provide evidence of comparators and thus, also failed to establish a causal connection between their status as a protected class and any disparate treatment they may have received. Therefore, they failed to establish a prima facie case. We conclude that the trial court properly granted summary judgment.

C.    Negligence and Negligent Infliction of Emotional Distress

The Sprys argue generally that the trial court erred by granting summary judgment. However, the contents of the Sprys' brief is specific to their discrimination claim. The Sprys do not brief the dismissal of their negligence claims. The Sprys also did not respond to the part of PSD's motion for summary judgment arguing that the negligence claim should be dismissed. At the summary judgment hearing, the Sprys did not provide facts to support their claim. We need not consider the issue because the Sprys failed to argue it fully below at summary judgment and

failed to present an argument in their brief. *See* RAP 9.12; *see also Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992) (holding that an appellant waives an issue when he fails to argue it in his appellate brief).[5]

We affirm the trial court.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Melnick, J.

We concur:

Maxa, P.J.

Sutton, J.

---

[5] We further note that the negligent infliction of emotional distress claim was based on the same facts as the discrimination claim and thus, duplicative of the discrimination claim. A negligent infliction of emotional distress claim cannot be based upon the same facts as a contemporaneous discrimination claim. *Robel v. Roundup Corp.*, 103 Wn. App. 75, 91, 10 P.3d 1104 (2000), *rev'd on other grounds*, 148 Wn.2d 35, 59 P.3d 611 (2002). "[A] separate claim for emotional distress is not compensable when the only factual basis for [the emotional] distress was the discrimination claim." *Chea v. Men's Warehouse, Inc.*, 85 Wn. App. 405, 413, 932 P.2d 1261 (1997).